Case No. 14-00297-RSM

USBC, WAWB 14-S002
Bankruptcy Court No. 12-01630-KAO (Bankr. W.D. Wash.)

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____

In re PETER J. MEYER and SHAREE L. MEYER
Debtors.
_____

PETER J. MEYER and SHAREE L. MEYER,
Appellees/Plaintiffs,

v.

NORTHWEST TRUSTEE SERVICES, INC.
Appellant/Defendant

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
_____

OPENING BRIEF OF APPELLANT NORTHWEST TRUSTEE SERVICES, INC.

_____

| | | |
|---|---|---|
| Joshua S. Schaer | Steven K. Linkon | Heidi Buck Morrison |
| WSBA #31491 | WSBA #34896 | WSBA #41769 |
| RCO Legal, P.S. | RCO Legal, P.S. | RCO Legal, P.S. |
| 13555 S.E. 36th St., | 13555 S.E. 36th St., | 13555 S.E. 36th St., |
| Ste. 300 | Ste. 300 | Ste. 300 |
| Bellevue, WA 98006 | Bellevue, WA 98006 | Bellevue, WA 98006 |
| (425) 457-7810 | (425) 586-1952 | (425) 213-5534 |
| (425) 974-8680 (fax) | (425) 283-5952 (fax) | (425) 283-5968 (fax) |
| jschaer@rcolegal.com | slinkon@rcolegal.com | hbuckmorrison@rcolegal.com |

Attorneys for Appellant Northwest Trustee Services, Inc.

# TABLE OF CONTENTS

**I. Jurisdictional Statement** ...................................................................1

**II. Issues for Review** .........................................................................1

**III. Standard of Review** ....................................................................1

**IV. Statement of Facts** ......................................................................2

**V. Statement of the Case** ................................................................4

**VI. Authority and Argument** .........................................................5

    A. The Meyers' Failure to List The Asserted Claims In Their Bankruptcy Schedules and Their Confirmed Plan Operate To Bar Them From Belatedly Asserting Said Claims Under The Doctrine Of Judicial Estoppel ..............................................................5

        1. The Meyers Were Required to List Their Claims Against NWTS in Their Bankruptcy Schedules...............................................................5

        2. The Omission of Claims Against NWTS From Their Bankruptcy Schedules Precludes The Meyers From Asserting Them Later.......................6

    B. A Violation of the DTA Requires Materiality and Prejudice...........................................8

    C. NWTS Did Not Fail To Materially Comply With The DTA When Issuing The Notice Of Default Because It Was Undisputed That the Beneficiary Properly Appointed NWTS As The Successor Trustee.................................................9

    D. NWTS Was Entitled to Rely on Documentation Without Having to Verify The Underlying Authority to Foreclose ........................................................11

        1. No Statutory or Common Law Duty to Investigate Foreclosure-Related Information in the Referral Exists ...................................11

        2. NWTS Did Not Violate the DTA Through Reliance on a Beneficiary Declaration Executed by Wells Fargo as Attorney-in-Fact for U.S. Bank ..............................................................13

        3. NWTS Did Not Violate the DTA Through Reliance on the Loss Mitigation Declaration .......................................................16

    E. The Deed of Trust Act ("DTA") Does Not Prohibit a Trustee From Listing The Loan Servicer's Address In a "c/o" Capacity For The Note Owner In The Notice of Default ......................................................19

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE - i

**RCO**
**LEGAL, P.S.**

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:   425.458.2131

   F.  NWTS Did Not Violate the CPA.................................................................20

      1.  There Was No Unfair or Deceptive Practice Affecting the Public .................21

      2.  There Was No Public Interest Impact ...................................................23

      3.  NWTS Did Not Cause Injury to the Meyers...........................................24

            a.  Identification of the Alleged Injuries ...................................24

            b.  NWTS Did Not Cause the Meyers to Send a Supposed QWR.............26

            c.  NWTS Did Not Cause the Meyers' Bankruptcy Filing .......................27

            d.  NWTS Did Not Cause the Meyers to Incur Rent, Deposits,
                and Moving Expenses ...........................................................28

VII.  Conclusion .........................................................................................30

# TABLE OF AUTHORITIES

**Case Law**

*Aguiar v. Wells Fargo Bank, N.A.*, 2012 WL 5915124 (N.D. Cal. Nov. 26, 2012) ........................2

*Akopyan v. Wells Fargo Home Mtg., Inc*., 215 Cal. App. 4th 120 (2013).....................................2

*Albice v. Premier Mtg. Servs. of Wash.*, 174 Wn.2d 560, 276 P.3d 1277 (2012)
(Stephens, J., concurring)...........................................................................................8

*Albice v. Premier Mortgage Servs. of Wash.*, 157 Wn. App. 912,
239 P.3d 1148 (2010) *aff'd*, 174 Wn.2d 560, 276 P.3d 1277 (2012)............................................17

*Ambach v. French*, 167 Wn.2d 167, 216 P.3d 405 (2009) ........................................................29

*Amresco Independence Funding, Inc. v. SPS Props., LLC*, 129 Wn. App. 532,
119 P.3d 884 (2005)....................................................................................................8

*Anderson v. City of Seattle*, 78 Wn.2d 201, 471 P.2d 87 (1970) ...............................................14

*Babrauskas v. Paramount Equity Mtg.*, 2013 WL 5743903 (W.D. Wash. Oct. 23, 2013)......21, 25

*Bain v. Metro. Mtg. Grp., Inc.*, 175 Wn.2d 83, 285 P.3d 34 (2012)........................................23, 24

*Bain v. Metro. Mtg. Grp. Inc.*, 2010 WL 891585 (W.D. Wash. Mar. 11, 2010) ...........................14

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE - ii

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

*Bhatti v. Guild Mtg. Co.,* 2013 WL 6773673 (9th Cir. Dec. 24, 2013) .........................25

*Boone v. United States,* 944 F.2d 1489 (9th Cir. 1991) .................................................2

*Bradford v. HSBC Mortgage Corp.,* 799 F.Supp.2d 625 (E.D. Va. 2011) ............... 24-25

*Brodie v. NWTS,* 2014 WL 2750123 (9th Cir. June 18, 2014) ......................................14

*Bryant v. Bryant,* 125 Wn.2d 113, 882 P.2d 169 (1994) ..............................................15

*Clearwater v. Skyline Const. Co., Inc.,* 67 Wn. App. 305, 835 P.2d 257 (1992),
*rev. denied,* 121 Wn.2d 1005, 848 P.2d 1263 ..............................................................10

*Cunningham v. Reliable Concrete Pumping,* 126 Wn.App. 222, 108 P.3d 147 (2005) .................6

*Gossen v. J.P. Morgan Chase Bank, N.A.,* 819 F.Supp.2d 1162 (W.D. Wash.2011).....................9

*Haag v. PNC Bank NA,* 13-1746-JLR, 2014 WL 526807 (W.D. Wash. Feb. 10, 2014).................7

*Hallquist v. United Home Loans, Inc.,* 715 F.3d 1040 (8th Cir. 2013) ..........................12

*Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778 (9th Cir. 2001)................................ 5-6, 7

*Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778,
719 P.2d 531 (1986)....................................................................................................21, 24

*Hay v. First Interstate Bank of Kalispell, N.A.,* 978 F.2d 555 (9th Cir. 1992) .............................5

*Holder v. Holder,* 305 F.3d 854 (9th Cir. 2002) ..........................................................18

*Holiday Resort Comm. Ass'n v. Echo Lake Assoc., LLC,* 134 Wn. App. 210,
135 P.3d 499 (2006)......................................................................................................21

*In re Barrup,* 53 B.R. 215 (Bankr. D. Vt. 1985).............................................................18

*In re Brown,* 2013 WL 6511979 (B.A.P. 9th Cir. Dec. 12, 2013).................................21

*In re Bubble Up Delaware, Inc.,* 684 F.2d 1259 (9th Cir. 1982).....................................1

*In re Butler,* 2014 WL 3360481, Case No. 12-01209-MLB
(Bankr. W.D. Wash. Jul. 9, 2014)...............................................................10, 12, 20

*In re Luz Inc.,* 219 B.R. 837 (9th Cir. B.A.P. 1998) ....................................................2

*In re Namvar,* 2014 WL 1599423 (9th Cir. Apr. 22, 2014)...........................................18

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE - iii

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

*In re Veal*, 450 B.R. 897 (B.A.P. 9th Cir. 2011)................................................................27

*In re Visiting Home Services, Inc.*, 643 F.2d 1356 (9th Cir. 1981) ..................................1

*In re Wright*, 2012 WL 27500 (Bankr. D. Haw. Jan. 5, 2012) ........................................2

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59,
170 P.3d 10 (2007)..........................................................................................................24

*Indus. Indem. Co. of the Northwest, Inc. v. Kallevig,* 114 Wn.2d 907, 792 P.2d 520 (1990) .......17

*Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497,
156 Cal. Rptr. 3d 912 (2013) ....................................................................................26, 27

*Khadera v. ABM Indus. Inc.*, 08-0417 RSM, 2012 WL 581402 (W.D. Wash. Feb. 21, 2012) .......7

*Klem v. Wash. Mutual Bank*, 176 Wn.2d 771, 295 P.3d 1179 (2013) ............................12

*Klinger v. Wells Fargo Bank, NA,* 2010 WL 4237849 (W.D. Wash. 2010)......................9

*Knecht v. Fid. Nat. Title Ins. Co.* 2013 WL 7326111 (W.D. Wash. Mar. 11, 2013) .....................15

*Koegel v. Prudential Mut. Sav. Bank*, 51 Wn. App. 108, 752 P.2d 385 (1988) ................ 8, *passim*

*Laisure-Radke v. Barr Labs., Inc.,* 03-3654-RSM, 2006 WL 1727978
(W.D. Wash. Jun. 22, 2006)............................................................................................7

*Leingang v. Pierce Co. Med. Bureau, Inc.*, 131 Wn.2d 133, 930 P.2d 288 (1997) .........................21

*Marques v. Fed. Home Loan Mtg. Corp.* 2012 WL 6091412 (S.D. Cal. 2012) ..........................27

*Massey v. BAC Home Loans Servicing LP*, 2013 WL 6825309 (W.D. Wash. Dec. 23, 2013).....25

*McCrorey v. Fed. Nat. Mtg. Ass'n*, 2013 WL 681208 (W.D. Wash. Feb. 25, 2013) .............24, 25

*Mickelson v. Chase Home Fin. LLC*, 2014 WL 2750133 (9th Cir. Jun. 18, 2014) .......................25

*Mickelson v. Chase Home Fin. LLC*, 2012 WL 6012791 (W.D. Wash. Dec. 3, 2012),
*aff'd* 2014 WL 2750133 (9th Cir. Jun. 18, 2014) ................................................... 11-12

*Mickelson v. Chase Home Fin. LLC*, 2011 WL 5553821 (W.D. Wash. Nov. 14, 2011)...............12

*Moss v. Vadman*, 77 Wn.2d 396, 463 P.2d 159 (1970) ...............................................15

*Mulcahy v. Fed. Home Loan Mortgage Corp.*, 2014 WL 1320144
(W.D. Wash. Mar. 28, 2014) ...........................................................................................9

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

*Myers v. MERS et al.*, 2013 WL 4779758 (9th Cir. Sept. 9, 2013) ...............................................13

*Otter v. Northland Grp., Inc.,* 12-2034-RSM, 2013 WL 2243874 (W.D. Wash. May 21, 2013) ...7

*Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 204 P.3d 885 (2009) ..........................21, 24

*Puget Sound Nat. Bank v. Ferguson*, 102 Wn. App. 400, 7 P.3d 822 (2000)................................6

*Reinke v. NWTS (In re Reinke),* 2011 WL 5079561, (Bankr. W.D. Wash. Oct. 26, 2011) ............9

*Richard v. Deutsche Bank Nat. Trust Co.*, 2012 WL 1082602 (D. Or. Mar. 30, 2012) ...............15

*Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855 (9th Cir.2008).....................................................3

*Rouse v. Wells Fargo Bank, N.A.*, 2013 WL 5488817 (W.D. Wash. Oct. 2, 2013),
*appeal dismissed* ........................................................................................................................23

*Saunders v. Lloyd's of London*, 113 Wn.2d 330, 779 P.2d 249 (1989)...................................21, 22

*Segal Co. (Eastern States), Inc. v. Amazon.com*, 280 F.Supp.2d 1229 (W.D. Wash. 2003) ............23

*Sorrel v. Eagle Healthcare*, 110 Wn. App. 290, 38 P.3d 1024 (2002)........................................21

*Spenser v. Deutsche Bank*, 2011 WL 6816343 (W.D. Wash. Dec. 28, 2011)..............................15

*Steward v. Good,* 51 Wn. App. 509, 754 P.2d 150 (1988) ...........................................................8

*Summerhill Vill. Homeowners Assoc. v. Roughley*, 166 Wn. App. 625, 270 P.3d 639 (2012)*,*
*amended on reconsid.*, 289 P.3d 645 (2012) ..............................................................................14

*Thepvongsa v. Reg'l Tr. Servs. Corp.*, 2011 WL 307364 (W.D. Wash. Jan. 26, 2011) ...............17

*Tran v. Bank of America,* 2013 WL 64770 (W.D. Wash. Jan. 4, 2013) .......................................23

*Trujillo v. NWTS*, -- Wn. App. --, 2014 WL 2453092 (Jun. 2, 2014)............ 12, 14, 20, 22, *passim*

*US Bank Nat. Ass'n v. Woods*, 2012 WL 2031122 (W.D. Wash. Jun. 6, 2012)...........................15

*Vawter v. Qual. Loan Serv. Corp. of Wash.*, 2010 WL 5394893 (W.D. Wash. Dec. 23, 2010)......9

*Walker v. Quality Loan Serv. Corp.*, 176 Wn. App. 294, 308 P.3d 716 (2013) ...........................12

*Wash. State Physicians Ins. Exch. & Ass'n v. Fisons*, 122 Wn.2d 299, 858 P.2d 1054 (1993) ....29

*Wolverton v. MortgageIt, Inc.,* 2011 WL 5117573 (D. Nev. Oct. 24, 2011)...................................2

*Zalac v. CTX Mortgage Corp.*, 2013 WL 1990728 (W.D. Wash. May 13, 2013) ........................17

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE - v

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

**Court Rules**

Fed. R. Bank. P. 8010, Advisory Committee Notes ..................................................2

Fed. R. Bank. P. 8013 ....................................................................................................1

Fed. R. Evid. 804(a) ....................................................................................................18

Fed. R. Evid. 804(b)(1)(B)..........................................................................................18

**Secondary Sources**

*Legislative Materials*

2009 Wash. Legis. Serv. Ch. 292 (S.B. 5810) § 8, eff. July 26, 2009 ..........................12

*Reference Materials*

Black's Law Dictionary, 701 (7th ed. 1999)................................................................17

*Websites*

https://www.wellsfargo.com/mortgage/manage-account/americas-servicing-company .................2

**Statutes and Codes**

*United States Code*

11 U.S.C. §107(a) ..........................................................................................................3

12 U.S.C. § 2605(e)(1)..................................................................................................26

12 U.S.C. § 2605(e)(1)(B)............................................................................................26

12 U.S.C. §2605(e)(3)...................................................................................................26

28 U.S.C. § 157 ..............................................................................................................1

28 U.S.C. § 158(a) ..........................................................................................................1

28 U.S.C. § 1334 ............................................................................................................1

*Revised Code of Washington*

RCW 19.86 ......................................................................................................................5

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:    425.458.2131

RCW 19.86.090 ...................................................................................................29

RCW 19.86.093 ...................................................................................................21

RCW 59.18.260 ...................................................................................................29

RCW 61.24.010(3) ..............................................................................................17

RCW 61.24.010(4) ..............................................................................................17

RCW 61.24.030 ...................................................................................................11

RCW 61.24.030(7) ..............................................................................................12

RCW 61.24.030(7)(b) .........................................................................................22

RCW 61.24.030(8) ................................................................1, 8, 9, 11, 16

RCW 61.24.030(8)(l) ..........................................................................................19

RCW 61.24.031 ...................................................................................................14

RCW 61.24.031(1)(a) ...........................................................................................9

RCW 61.24.031(2) .......................................................................................16, 22

RCW 61.24.040(4) ..............................................................................................14

RCW 61.24.127 .....................................................................................................8

RCW 61.24.163 .....................................................................................................4

**Other Court Proceedings**

*Frias v. Asset Foreclosure Services, Inc. et al.*, Wash. Supr. Ct. Case No. 89343-8 .....................8

*Frias v. Asset Foreclosure Services, Inc. et al.*, Case No. 13-00760-MJP
(W.D. Wash. Sept. 25, 2013) ..................................................................................8

*Geline v. NWTS, et al.*, King County Superior Court Case No. 09-2-46576-2 .............................18

*In re Brown*, Case No. 11-01056-TWD (Bankr. W.D. Wash. Feb. 22, 2011) ..............................21

*In re Meyer*, U.S.B.C. W.D. Case No. 10-23914-KAO ....................................................3

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Phone: 425.458.2121
Fax:     425.458.2131

# I.    JURISDICTIONAL STATEMENT

Appellant Northwest Trustee Services, Inc. ("NWTS") asserts that the bankruptcy court had jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Further, this court has jurisdiction of NWTS' appeal under 28 U.S.C. § 158(a).

# II.    ISSUES FOR REVIEW

1.    Whether the Meyers' claims against NWTS are barred by judicial estoppel, arising from their confirmed bankruptcy plan, because these claims were never scheduled.

2.    Whether the Bankruptcy Court erred in finding that NWTS materially failed to comply with the Deed of Trust Act ("DTA"), by:

a.    Referring to itself as an "authorized agent of the beneficiary" in the Notice of Default when NWTS had already been appointed by U.S. Bank as the successor trustee, and under RCW 61.24.030(8), NWTS was authorized to issue the Notice of Default;

b.    Relying on a referral from, and declarations executed by, U.S. Bank's attorney-in-fact and/or authorized agent without verifying the underlying basis for authority to execute documents and foreclose;

c.    Including the loan servicer's address and phone number as contact information for the loan owner in the Notice of Default.

3.    Whether the Bankruptcy Court erred in finding that NWTS' conduct violated the Washington Consumer Protection Act ("CPA"), and awarding damages under the CPA that were not proximately caused by NWTS.

# III.    STANDARD OF REVIEW

The district court reviews the bankruptcy court's findings of fact for clear error.  *See* Fed. R. Bank. P. 8013.  The district court reviews the bankruptcy court's conclusions of law *de novo*. *In re Visiting Home Services, Inc.*, 643 F.2d 1356 (9th Cir. 1981).  "When the facts in the record are not in significant dispute, our task is to determine whether a legal conclusion is contrary to law."  *In re Bubble Up Delaware, Inc.*, 684 F.2d 1259 (9th Cir. 1982).  "When the facts are

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 1 OF 30

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

established and the rule of law is undisputed, whether the facts satisfy the legal rule is a mixed question of fact and law." *In re Luz Inc*., 219 B.R. 837 (9th Cir. B.A.P. 1998), *citing Pullman-Standard v. Swint*, 456 U.S. 273 (1982). The district court reviews mixed questions of fact and law on a *de novo* basis. *Boone v. United States*, 944 F.2d 1489 (9th Cir. 1991).

## IV.    STATEMENT OF FACTS

On November 10, 2005, debtors Peter J. Meyer and Sharee L. Meyer (collectively, "the Meyers") borrowed $425,000 from Finance America, LLC. Appendix to Appellant's Brief ("Appx.") 32-36 (Note).[1] The Meyers signed an Adjustable Rate Note (the "Note") and a deed of trust (the "Deed of Trust") to secure the loan. Appx. 32-36; 37-60.

The Deed of Trust encumbers property in Snohomish, WA (the "Property"). *Id*. The Meyers agreed that the Note and Deed of Trust could be sold without notice to them. Appx. 48, ¶ 20. In April 2006, the Meyers' loan was transferred to a securitized trust, GEL2.[2] U.S. Bank was the trustee of the trust. Appx. 4:1-2 (M.D.). America's Servicing Company ("ASC"), a division of Wells Fargo ("Wells Fargo"), acted as the loan servicer.[3] Appx. 4:18-21 (M.D.).

The Note requires a payment of principal and interest each month. Appx. 32, § 3. The Meyers agreed that if they did "not pay the full amount of each monthly payment on the date it is due," they would be in default. Appx. 34, ¶ 7(B).

In June 2010, Wells Fargo advised NWTS of a default under the Note and that it wished to commence a foreclosure under the Meyers loan.[4] Appx. 219 at 84:8-85:19.[5] Three separate

---

[1] Pursuant to the Advisory Committee Notes to Fed. R. Bank. P. 8010, citations to the record on appeal are made with reference to the appropriate page number of the concurrently filed Appendix to Appellant's Opening Brief.

[2] The full name of the trust was Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series 2006-GEL2 ("GEL2"). Appx. 3:16-19 (Memorandum Decision, hereinafter "M.D.").

[3] The loan servicer is responsible for collecting loan payments, allocating them, and accounting for them to the borrowers and the note holders. *Akopyan v. Wells Fargo Home Mtg., Inc*., 215 Cal. App. 4th 120, 137 (2013). ASC is the "servicing division of Wells Fargo." *Aguiar v. Wells Fargo Bank, N.A*., 2012 WL 5915124 (N.D. Cal. Nov. 26, 2012); *see also, e.g., In re Wright*, 2012 WL 27500 (Bankr. D. Haw. Jan. 5, 2012), (ASC "is a dba of Wells Fargo" servicing loans in a trust with U.S. Bank as trustee); *Wolverton v. MortgageIt, Inc.,* 2011 WL 5117573 (D. Nev. Oct. 24, 2011); *see also* https://wellsfargo.com/mortgage/manage-account/americas-servicing-company.

[4] Wells Fargo, as servicer and U.S. Bank, as trustee, are parties to a Securitization Subservicing Agreement that authorizes Wells Fargo to foreclose on any loans of GEL2. Appx 71, § 3.02.

[5] An appointment of successor trustee, appointing NWTS as successor trustee, was signed by Wells Fargo, acting as attorney-in-fact for U.S. Bank, trustee for GEL2, and recorded July 1, 2009. Appx. 72.

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 2 OF 30

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

limited powers of attorney signed by U.S. Bank authorized Wells Fargo to execute all documents necessary to collect money due on mortgage loans, among other things.  Appx. 61-66.[6]

In July 2010, NWTS issued a notice of default under the Meyers' deed of trust.  Appx. 73-75.  In connection with the Notice of Default, NWTS was provided a beneficiary declaration as required by RCW 61.24.030(7), dated June 24, 2010.  Appx. 76.  The beneficiary declaration recited that U.S. Bank, as Trustee for GEL2 was the actual holder of the Note.  *Id.*  The beneficiary declaration was signed by Wells Fargo, as attorney-in-fact for U.S. Bank.  *Id.*

In August 2010, NWTS recorded a notice of trustee's sale, reciting a sale date of November 19, 2010.  Appx. 77-80.  One day before the sale, the Meyers filed a chapter 13 bankruptcy.  Appx. 81-126 (petition and schedules, U.S.B.C. W.D. Case No. 10-23914-KAO, Dkt. 1).[7]  On December 21, 2010, U.S. Bank, as trustee for GEL2, filed a proof of claim listing the total amount due under the loan as $502,190.76, with delinquent monthly payments from February 1, 2009 to November 1, 2010, and other costs totaling $86,020.02.  Appx. 127-128.[8]

The Meyers' initially proposed a chapter 13 plan providing for loan payments to GEL2 of just $2,000 per month.  *See* Case No. 10-23914, Dkt. 6.  U.S. Bank opposed plan confirmation because it did not provide for payment of the $3,448.30 monthly mortgage amount or provide for curing prepetition arrears totaling $86,020.02.  *Id.* at Dkt. 19; *see also* Appx. 12:23-27 (M.D.). This dispute was resolved by the Meyers agreeing to give up the Property.  Appx. 13:1-4.

On June 1, 2011, the Meyers stipulated that U.S. Bank could have relief from the automatic stay, effective June 22, 2011.  Appx. 129-130; *see also* Case No. 10-23914, Dkt. 30. The Meyers also amended their plan to remove the U.S. Bank loan.  *See* Case No. 10-23914, Dkt. 31 ("Third Amended Chapter 13 Plan 'removing home mortgage per Relief from Stay'"). On August 19, 2011, a plan without the subject mortgage was confirmed.  *Id.*, Dkt. 38, 40.

---

[6] These Limited Powers of Attorney were recorded in the records of Snohomish County on June 12, 2007, August 20, 2007, and September 24, 2007, respectively.  Appx. 61-66.
[7] Filings in bankruptcy court are judicially noticeable matters of public record.  *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855 (9th Cir.2008), *citing Kourtis v. Cameron*, 419 F.3d 989 (9th Cir.2005); *see also* 11 U.S.C. §107(a).
[8] The Meyers' scheduled the value of the Property as $385,000, far below the secured debt outstanding.  Appx. 89.

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 3 OF 30

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    The Meyers subsequently sought mediation under the Foreclosure Fairness Act, RCW

2   61.24.163.  Appx. 163, ¶ 16 (Dec. of Stenman).  The Meyers participated in three mediation

3   sessions which included a Wells Fargo representative.  Appx.  223-224 at 213:5-215:9.[9]

4                    **V.      STATEMENT OF THE CASE**

5            Despite having agreed to relief from stay, and removing the loan from their plan, the

6   Meyers commenced an adversary proceeding almost a year after plan confirmation.  On July 23,

7   2012, the Meyers filed a complaint in the bankruptcy court against U.S. Bank, Wells Fargo,

8   Mortgage Electronic Registration Systems Inc. ("MERS") and NWTS.  Appx. 253, Dkt. 1.

9            On August 2, 2012, the bankruptcy court entered a temporary restraining order, which

10   required Meyers to deposit $3,616.13 into the Registry of the Court by August 6, 2012.  Appx.

11   255, Dkt. 16.  On August 20, 2012, a preliminary injunction requiring the Meyers to continue to

12   make monthly payments was entered.  Appx. 256, Dkt. 22.  In November 2012, the Meyers filed

13   a Second Amended Complaint (the "SAC").  Appx. 165-189; Appx. 257, Dkt. 49.

14            In May 2013, U.S. Bank, Wells Fargo, and MERS moved to impose sanctions on the

15   Meyers for their failure to comply with a discovery order.  Appx. 258, Dkt. 82.  Then, after the

16   Meyers stopped making ordered payments, the injunction was dissolved.  Appx. 260, Dkt. 90.

17   On June 5, 2013, the bankruptcy court sanctioned the Meyers by dismissing all of their claims

18   against U.S. Bank, Wells Fargo, and MERS, with prejudice.  *Id.*, Dkt. 91.

19            On October 8, 2013, the case proceeded to trial against NWTS on claims for violation of

20   the Washington  Deed of Trust Act, RCW 61.24 *et seq.* ("DTA"), the Washington Consumer

21   Protection Act, RCW 19.86 *et seq.* ("CPA"), and the Fair Debt Collection Practices Act

22   ("FDCPA"), 15 U.S.C §§ 1692-1692p.  Appx. 13:26-14:12 (M.D.).

23            On February 18, 2014, the bankruptcy court issued its memorandum decision, awarding

24   damages to Meyers of $48,504, comprising actual damages of $23,504, plus CPA treble damages

25   of $25,000.  Appx. 31.  On March 26, 2014, the bankruptcy court also awarded the Meyers

26

---

[9] NWTS played no part in the mediation process.  Appx. 223-224 at 213:23-215:3.

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 4 OF 30

**RCO**
**LEGAL, P.S.**

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

attorney's fees of $30,324 and costs of $294.40, pursuant to RCW 19.86.  Appx. 238-239.

On April 8, 2014, the bankruptcy court issued its final order and judgment.  Appx. 240-242.  That same day, NWTS filed an amended notice of appeal.  Appx. 247-250.[10]

## VI.    AUTHORITY AND ARGUMENT

**A.    The Meyers' Failure to List The Asserted Claims In Their Bankruptcy Schedules and Their Confirmed Plan Operate To Bar Them From Belatedly Asserting Said Claims Under The Doctrine Of Judicial Estoppel.**

### 1.    The Meyers Were Required to List Their Claims Against NWTS in Their Bankruptcy Schedules.

Without even reaching the individual causes of action, the bankruptcy court should have dismissed all of the Meyers' claims because they failed to list these claims as assets in their bankruptcy schedules.  Appx. 81-126; *see Hamilton v. State Farm Fire & Cas. Co*., 270 F.3d 778, 782-83 (9th Cir. 2001); *see also Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555 (9th Cir. 1992).  Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position.  *Hamilton*, *supra*. at 782.

Where a litigant has previously filed bankruptcy, judicial estoppel applies to bar a party from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements.  *Id*. at 783.

In *Hamilton*, the Ninth Circuit Court of Appeals affirmed the district court's application of judicial estoppel to bar the claims of an insured party who had failed to list potential claims against his insurance company as an asset in his bankruptcy petition, but then later sued on the same claims.  The court noted that it "must invoke judicial estoppel to protect the integrity of the bankruptcy process."  *Id*. at 785.  The Court of Appeals held that "[j]udicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure

---

[10] NWTS initially filed a notice of appeal on February 28, 2014.  Appx. 243-246.

**RCO**
**LEGAL, P.S.**

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

statements to identify the cause of action as a contingent asset." *Id.* at 784 (citations omitted).

The Meyers were required in their bankruptcy schedules to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims[.]" *See* Appx. 91 (Schedule B, ¶ 21 "Other contingent and unliquidated claims of every nature"). But although the Meyers had already received the Notice of Default and initial sale notice from NWTS, and they had knowledge of all issues forming their basis for this litigation, the Meyers failed to list *any* claims against NWTS in their bankruptcy schedules. *Compare* Appx. 73-75, 77-80, 81-126 (Notice of Default and Notice of Trustee's Sale, Bankruptcy Petition and Schedules). In fact, where required to list their claims in scheduling the subject loan, the Meyers checked the column indicating there were "NONE." Appx. 91; *see also* Appx. 94. As NWTS argued at trial, the effect of this decision should have resulted in the application of judicial estoppel. Appx. 236-237 at 165:22-167:15.

### 2.   The Omission of Claims Against NWTS From Their Bankruptcy Schedules Precludes The Meyers From Asserting Them Later.

Omission of a potential cause of action from one's bankruptcy schedules is tantamount to a representation that no such cause of action exists. *Hamilton*, 270 F.3d at 785 ("The Bankruptcy Code and Rules 'impose upon… debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims.'"). A debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy. *Id.*, *citing In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999).

The Washington Court of Appeals has found that "[p]ossible causes of action should be listed, *even if the likelihood of success is unknown*." *Cunningham v. Reliable Concrete Pumping*, 126 Wn.App. 222, 230, 108 P.3d 147 (2005) (emphasis added). In fact, Washington Courts routinely apply judicial estoppel to bar claims asserted against a lender post-bankruptcy that were not disclosed in the bankruptcy schedules, exactly as urged here. *See*, *e.g.*, *Puget Sound Nat. Bank v. Ferguson*, 102 Wn. App. 400, 403-04, 7 P.3d 822, 824-25 (2000) ("Because of the

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Bankruptcy Code requirements to disclose the whole spectrum of a petitioner's financial affairs, 'courts that have considered the effect of a debtor's failure to disclose a potential lender-liability lawsuit in a bankruptcy proceeding have universally held that the debtor is equitably estopped, judicially estopped, or barred by res judicata [from asserting the omitted claims afterward]'.").

As mentioned above, the Meyers were plainly on notice of their potential claims prior to filing bankruptcy in August 2011.  All of the Meyers' claims related to what they believed was an unlawful foreclosure action against their residence.  Appx. 14:22-24 (M.D.).  The SAC specifically complained of the March 2009 assignment of deed of trust, the March 2009 Appointment of Successor Trustee, the July 2010 Notice of Default, a 2010 foreclosure loss mitigation declaration, the June 2010 beneficiary declaration, and the August 13, 2010 Notice of Trustee's Sale.  Appx. 170-176 (SAC ¶¶ 3.6-3.18).  The Meyers asserted that: 1) NWTS lacked authority to sign the assignment of deed of trust, 2) NWTS wrongfully assigned the Note, 3) NWTS should have known U.S. Bank was not the beneficiary of the Deed of Trust, 4) NWTS could not act as an agent for any of the defendants, 5) NWTS had no authority to issue the Notice of Default, 5) NWTS could not rely on the beneficiary declaration, and 6) NWTS could not issue a sale notice, among other things.  *Id.*; (SAC ¶¶ 3.6, 3.8 3.9, 3.12, 3.14, 3.15, 3.17 and 3.18).

Therefore, under established principles of judicial estoppel in the bankruptcy context, *all of* the Meyers' claims should have been barred.  *See Hamilton*, 270 F.3d at 783-85 (explaining how the elements of judicial estoppel are met when a debtor fails to list contingent claims on bankruptcy schedules and the claims were known at time of bankruptcy); *accord Haag v. PNC Bank NA*, 13-1746-JLR, 2014 WL 526807 (W.D. Wash. Feb. 10, 2014) ("If she wanted to preserve those claims, she needed to list them in her bankruptcy petition."); *Otter v. Northland Grp., Inc.,* 12-2034-RSM, 2013 WL 2243874 (W.D. Wash. May 21, 2013); *Khadera v. ABM Indus. Inc*., 08-0417 RSM, 2012 WL 581402 (W.D. Wash. Feb. 21, 2012); *Laisure-Radke v. Barr Labs., Inc.,* 03-3654-RSM, 2006 WL 1727978 (W.D. Wash. Jun. 22, 2006).

It was error for the bankruptcy court to have disregarded this issue in its decision, and the

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 7 OF 30

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

verdict below should be reversed on this ground alone.  Appx. 237 at 166:19-167:15.

> **B.** **A Violation of the DTA Requires Materiality and Prejudice.**

Even if the Meyers' claims could survive judicial estoppel, they still did not prove NWTS materially violated the DTA in a manner prejudicing them.  *See Albice v. Premier Mtg. Servs. of Wash.*, 174 Wn.2d 560, 276 P.3d 1277 (2012) (Stephens, J., concurring); *Amresco Independence Funding, Inc. v. SPS Props., LLC*, 129 Wn. App. 532, 119 P.3d 884 (2005); *Steward v. Good,* 51 Wn. App. 509, 754 P.2d 150 (1988) (noting a "requirement that prejudice be established" where a "technical violation" of the DTA occurs and there was "no showing of harm to the debtor"); *Koegel v. Prudential Mut. Sav. Bank*, 51 Wn. App. 108, 752 P.2d 385 (1988).[11]

In *Koegel*, the Notice of Default erroneously contained an "additional description of a plot that had been conveyed and was no longer part of the transaction."  *Id.* at 110.  Further, the Notice of Trustee's Sale "was sent only 25 days after the corrected notice of default," contrary to RCW 61.24.030(8) requiring at least 30 days.  *Id.* at 111.  The Court of Appeals, Division One, stated: "[t]his is not to say, however, that the strict compliance requirement eliminates any consideration of prejudice before a sale may be set aside."  *Id.* at 112.[12]

Based on this reasoning, *Koegel* found that:

> Appellant's contentions that he was prejudiced by this lapse are disingenuous.  The notice of default listed the loan which was in arrears.  From that information, appellant would be on notice that the property offered as collateral for that loan would be in jeopardy of foreclosure.  The purpose of the notice of default is to notify the debtor of the amount he owes and that he is in default.  In fact, the notice of default properly listed the amount of arrears and noted the deed of trust that was subject to foreclosure.

*Id.*

---

[11] The question of whether the DTA even contemplates a pre-sale damages claim is currently pending before the Washington Supreme Court in *Frias v. Asset Foreclosure Services, Inc. et al.*, Case No. 89343-8, pursuant to certified questions from Judge Pechman.  The certification lists ten Western District of Washington judges who have all agreed that *no* pre-sale DTA damages claim exists.  *See* 13-00760-MJP, Dkt. 48 (W.D. Wash. Sept. 25, 2013).

[12] The Court wrote:
> Appellant was aware of the technical defects in the notices of default.  Nonetheless, appellant neither provided U.S. Trustee with documentation of the precise errors alleged, nor acted to restrain the sale.  In fact, the trustee granted appellant a series of continuances….  The continuances alone would ameliorate any harm appellant suffered by having 5 fewer days' notice… than required by RCW 61.24.030(6).

*Id.* at 112.  Nothing in the current DTA, including RCW 61.24.127, changes this necessity of showing prejudice.

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 8 OF 30

**RCO**
**LEGAL, P.S.**

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Similarly, this Court has previously ruled that technical errors in the execution of the foreclosure process do not create a cause of action against a trustee. *See Mulcahy v. Fed. Home Loan Mortgage Corp.*, 2014 WL 1320144 (W.D. Wash. Mar. 28, 2014) (holding that the trustee has "few obligations under the statute."); *Vawter v. Qual. Loan Serv. Corp. of Wash.*, 2010 WL 5394893 (W.D. Wash. Dec. 23, 2010) (no showing of prejudice resulted in no trustee liability).

The bankruptcy court's decision finds three ways that NWTS "failed to materially comply with its [DTA] duties," although no mention is made of prejudice to the Meyers. Appx. 23:6-14 (M.D.). The bankruptcy court identifies: 1) NWTS' issuance of the Notice of Default as "the authorized agent of U.S. Bank," 2) NWTS' initiating foreclosure "without verifying… the authority of Wells Fargo or U.S. Bank to maintain such foreclosure," and 3) not providing the Meyers with "the most basic information… about the current holder and owner of their loan," as the bases for DTA violations. *Id.* Each of these issues will be addressed in turn below.

**C.    NWTS Did Not Fail To Materially Comply With The DTA When Issuing The Notice Of Default Because It Was Undisputed That the Beneficiary Properly Appointed NWTS As The Successor Trustee.**

Under the DTA, a notice of default may be delivered by the beneficiary, its agent, *or* the trustee. *See* RCW 61.24.030(8); *see also* RCW 61.24.031(1)(a) ("A trustee, beneficiary, or authorized agent" may issue notice of default) (emphasis added); *see also, e.g., See Reinke v. NWTS (In re Reinke),* 2011 WL 5079561, *31 n. 10 (Bankr. W.D. Wash. Oct. 26, 2011) ("[a]lthough RCW 61.24.030 does not expressly authorize an agent to act for the beneficiary, the Court concludes that an authorized agent of the beneficiary may issue a notice of default on its behalf."); *Klinger v. Wells Fargo Bank, NA,* 2010 WL 4237849 (W.D. Wash. 2010).

In this case, the signature line of the Notice of Default states that NWTS was the beneficiary's authorized agent. Appx. 75.[13] The bankruptcy court found that this was improper because NWTS "was not an authorized agent for U.S. Bank;" rather, NWTS "was already the

---

[13] This court has held that under Washington law, a Notice of Default does not even need to be signed. *See Gossen v. J.P. Morgan Chase Bank, N.A.*, 819 F.Supp.2d 1162 (W.D. Wash.2011).

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

successor trustee….”  Appx. 19:17-21 (M.D.); *see also* Appx. 72 (Appointment).

But the bankruptcy court’s conclusion is erroneous, because there were two possible statutory means for NWTS have possessed authority to issue the Notice of Default, *i.e.*, as agent for the beneficiary *or as the trustee, and NWTS had been properly appointed as the trustee* at that point in time.  *Id.*; *see also* Appx 31:2-4 (M.D.) (“NWTS had been appointed successor trustee when it issued the Notice of Default and it proved at trial that U.S. Bank was the holder of the Note with the right to foreclose against the Residence.”).  Given that NWTS was properly appointed as the successor trustee, it had authority to issue the Notice of Default even if its capacity was not listed – and the notice would still be valid.  *See Clearwater v. Skyline Const. Co., Inc.*, 67 Wn. App. 305, 835 P.2d 257 (1992), *rev. denied*, 121 Wn.2d 1005, 848 P.2d 1263.[14]

Recently, the Hon. Judge Barreca of the bankruptcy court issued a memorandum decision addressing NWTS’ actions as trustee in a case involving substantially comparable allegations.  *See In re Butler*, 2014 WL 3360481, Case No. 12-01209-MLB, Dkt. 233 (Bankr. W.D. Wash. Jul. 9, 2014); *see also Id.*, Dkt. 77 (Third Amended Complaint), ¶ 5.18 (alike damages claimed).  The *identical argument* relating to NWTS’ identification as agent in a notice of default was raised in *Butler*; Judge Barreca found no evidence that NWTS was *not* the beneficiary’s agent, and regardless, such reference was not a material DTA violation.  *Id.*, Dkt. 233 at 21:13-21.

Essentially, the bankruptcy court in this case held that a *minor imprecision* in the description of NWTS’ role in the Notice of Default was a *material defect* in the foreclosure.  The bankruptcy court rationalized its assignment of liability on this issue by citing the fact that the borrower was confused about the parties named in the document.  Appx. 19:23:25 (M.D.).

But under case law, such as *Koegel*, the bankruptcy court should have found that a technical error – especially one not creating prejudice – would not render the entire process defective.  Under the bankruptcy court’s reasoning, a subjective test of the borrower’s own understanding of a complex non-judicial foreclosure would be the standard for analyzing a pre-

---

[14] Even signing in the wrong name does not result in invalidity when executed by a proper party.  *Id.* at 320, n. 9.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

sale DTA claim.  However, the Washington Legislature has not allowed a subjective standard for DTA compliance; instead, the standard has always been actual prejudice, not mere confusion.

Moreover, because the Meyers consented to the Note and Deed of Trust being sold *without prior notice to them*, they should not be permitted to claim "confusion" when that is precisely what occurs.  Appx. 48, ¶ 20.  The Notice of Default does not schedule the sale, it does not divest ownership, and it does not prove authority to foreclose.  Instead, it is a warning to borrowers that the loan is in default and the property securing it may be subject to an eventual sale if the default is not cured.  *See* RCW 61.24.030(8).

Because NWTS was legally qualified to issue the Notice of Default, the bankruptcy court mistakenly applied a subjective standard to analyze the performance of DTA requirements.  NWTS did not materially breach RCW 61.24.030 in a manner prejudicing the Meyers when the Notice stated NWTS was U.S. Bank's authorized agent even though NWTS was nonetheless already the substituted trustee as a matter of both fact and law.  Consequently, this court should reverse the bankruptcy court's erroneous findings regarding the Notice of Default.

### D.     NWTS Was Entitled to Rely on Documentation Without Having to Verify The Underlying Authority to Foreclose.

#### 1.     No Statutory or Common Law Duty to Investigate Foreclosure-Related Information in the Referral Exists.

The bankruptcy court's decision impugns NWTS for accepting "without question" the authority of U.S. Bank and Wells Fargo.  Appx. 21:20-21 (M.D.).  But there is no authority compelling a trustee to carry out a secondary verification as part of its proscribed duties.

In addressing whether a trustee has an "affirmative duty of investigation," the Hon. Chief Judge Pechman found that:

> [t]he duty of good faith does not create a duty to conduct an independent verification of sworn affidavits.  This expansive view of good faith remains untenable.  NWTS relied, as they are specifically permitted to do, on a declaration made under penalty of perjury. They did not breach their duty of good faith in so doing.

*Mickelson v. Chase Home Fin. LLC*, 2012 WL 6012791 (W.D. Wash. Dec. 3, 2012), *aff'd* 2014

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

WL 2750133 (9th Cir. Jun. 18, 2014); *see also Mickelson*, 2011 WL 5553821 (W.D. Wash. Nov. 14, 2011) ("Plaintiffs would have every trustee conduct a secondary investigation into the papers filed by the beneficiary, which is simply too great a demand."); *accord Hallquist v. United Home Loans, Inc.*, 715 F.3d 1040 (8th Cir. 2013) ("[I]n the absence of unusual circumstances known to the trustee, he may, upon receiving a request for foreclosure… proceed upon that advice without making any affirmative investigation and without giving any special notice to the debtor.").

In the recent *Butler* decision mentioned above, Judge Barreca cited *Trujillo v. NWTS*, -- Wn. App. --, 2014 WL 2453092 (2014), finding NWTS "was entitled to rely on that Beneficiary Declaration, and *had no duty to undertake an independent investigation*."). *Id.*, Dkt. 233, 21:2-3.

By contrast, the opinion below relies heavily on *Walker v. Quality Loan Serv. Corp.* as "particularly thoughtful and on point." Appx. 18:3-4 (M.D.), *citing* 176 Wn. App. 294, 308 P.3d 716 (2013). That case is inapposite, however, because the *Walker* Court was compelled to accept all of the plaintiff's hypothetical facts as true for purposes of CR 12(b)(6), resulting in a finding that the trustee failed to conduct a "cursory investigation" into a beneficiary's "authority to foreclose." *Walker*, *supra.* at 309. Notably, *Walker* – and *Klem v. Wash. Mutual Bank*[15] – analyzed an earlier DTA version which *did not have a "beneficiary declaration" requirement* like the one found in the current statute. *Compare Walker*, *supra.* at 303 (Notice of Sale recorded July 21, 2009), 2009 Wash. Legis. Serv. Ch. 292 (S.B. 5810) § 8, eff. July 26, 2009.

Thus, when the *Walker* Court agreed that a trustee was "obligated to have evidence… [to foreclose] on a legitimate and legal basis and not simply… [act] at the behest of a party that may or may not have the legal right to conduct such an action," the Court did not consider the effect of a beneficiary declaration as that evidence. *Walker*, *supra.* at 309. Once the beneficiary declaration provision was added to the DTA, trustees were afforded a safe harbor to rely on a sworn averment regarding the holder of the note as sufficient proof under RCW 61.24.030(7).

The Ninth Circuit Court of Appeals has specifically found that *Walker* and *Klem* "do not

---

[15] 176 Wn.2d 771, 295 P.3d 1179 (2013).

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

change the result" when a foreclosing entity "actually holds the note," which the Court described as "the bottom line." *Myers v. MERS et al.*, 2013 WL 4779758 (9th Cir. Sept. 9, 2013).  Here, the evidence showed that the Note holder was U.S. Bank, as trustee for GEL2, and that Wells Fargo was expressly permitted to act on the Note holder's behalf to effectuate foreclosure. Appx. 5:23-26, 21:13-16 (M.D.); *see also* Appx. 213 at  231:3-232:7 (Wells Fargo authorized to declare default and foreclose pursuant to the servicing agreement).[16]

The evidence further demonstrated that NWTS received the foreclosure referral from ASC – part of Wells Fargo[17] – in a secure format that cannot be accessed by a third party.  Appx. 205 at 93:4-21.  If the referral information did not seem right, NWTS would have contacted ASC to clarify, rather than just proceeding with foreclosure.  Appx. 206 at 94:1-14.  But if there was "no reason to believe it was erroneous," no contact would have occurred.  Appx. 208 at 103:4-9.

Significantly, the Meyers never expressed a concern to NWTS that some inaccuracy or impropriety existed in the foreclosure process.  *See* Appx. 232 at 88:5-8 (Q.  "Did you communicate with [NWTS] regarding any… notices of sale that we've just discussed?"  A.  I did not.");  *see also* Appx. 225 at 220:25-221:10 (Mr. Meyer simply called NWTS to "find out what was going on.").  Without the slightest indication of a flaw in either the referral or related documents, NWTS was not obligated to seek out verification of the beneficiary or its servicer's authority.  The bankruptcy court's contrary finding was unfounded.  Appx. 23:10:11 (M.D.).

2.      **NWTS Did Not Violate the DTA Through Reliance on a Beneficiary Declaration Executed by Wells Fargo as Attorney-in-Fact for U.S. Bank.**

Although the bankruptcy court stated that Wells Fargo "took possession of the Note and the Allonge on March 1, 2006" for the benefit of U.S. Bank as trustee for GEL2, and "three

---

[16] The bankruptcy court found U.S. Bank was the "holder of the Note," but also "Wells Fargo, as custodian for U.S. Bank, as trustee for GEL2" was the holder.  *Compare* Appx. 5:23-26 (M.D.) ("Based upon the evidence, the Court concludes that the holder of the Note is Wells Fargo, as custodian for U.S. Bank, as trustee for GEL2."), 31:3-4 (M.D.) ([NWTS] "proved… that U.S. Bank was the holder of the Note with a right to foreclose…."").  Thus, the bankruptcy court appears to accept Wells Fargo's ability to act in the Note holder's stead for enforcement.
[17] *See* n. 1, *supra*.

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 13 OF 30

**RCO**
**LEGAL, P.S.**

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

separate powers of attorney… would have given Wells Fargo broad powers to sign documents related to foreclosures on behalf of U.S. Bank…," the court concluded that "NWTS could not rely on the Beneficiary Declaration because it had no proof that Wells Fargo had authority to execute that declaration on behalf of U.S. Bank." Appx. 21:13-22:03 (M.D.). This finding is not only contrary to the facts, but it opposes both recent case law and established agency principles.

The Washington Court of Appeals recently addressed the validity of a beneficiary declaration and a trustee's proper reliance on it in *Trujillo v. NWTS*, *supra*. *Trujillo*'s findings are especially pertinent to this appeal:

> [t]here is no evidence in this record that contests either the validity or truthfulness of this beneficiary declaration, signed by an officer of Wells Fargo under penalty of perjury and delivered to NWTS for the purpose of complying with this statute. Absent conflicting evidence, the declaration should be taken as true.

*Id.* at *5.[18]  The bankruptcy court did not have the benefit of *Trujillo* when it decided this case.

The Ninth Circuit Court of Appeals referenced *Trujillo* in *Brodie v. NWTS*, finding that no facts were alleged that "would have prevented [NWTS] from relying on… [the] beneficiary declaration." 2014 WL 2750123, *1 (9th Cir. June 18, 2014), *citing Trujillo*, *supra.* at *12-13. *Brodie* also recognized that a beneficiary can choose to act through its authorized agent to foreclose and appoint a successor trustee.  *Id.*

Indeed, the DTA expressly contemplates that the actions of the trustee or beneficiary can be performed by authorized agents.  *See* RCW 61.24.031; *see also* RCW 61.24.040(4), *Bain v. Metro. Mtg. Grp., Inc.*, 2010 WL 891585 (W.D. Wash. Mar. 11, 2010) ("[t]here is simply nothing deceptive about using an agent to execute a document, and this practice is commonplace in deed of trust actions.").[19]  For instance, a power of attorney confers on an agent the authority

---

[18] At any time after the July 2009 statutory creation of a "beneficiary declaration," the Legislature could have compelled trustees to inquire into every transfer of a secured note and to verify sworn documents provided by the beneficiary or its agent.  Yet, the Legislature did not take such action. *See Anderson v. City of Seattle*, 78 Wn.2d 201, 471 P.2d 87 (1970) ("[i]t is not the prerogative of the courts to amend the acts of the legislature.").

[19] The Washington Court of Appeals has tacitly recognized that an attorney-in-fact can act for a beneficiary. *See Summerhill Vill. Homeowners Assoc. v. Roughley*, 166 Wn. App. 625, 270 P.3d 639 (2012)*, amended on reconsid.*, 289 P.3d 645 (2012) ("GMAC, as loan servicer and attorney-in-fact for Deutsche Bank, instituted foreclosure….").

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 14 OF 30

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

to act in place of a principal for the purposes set forth in the instrument. *Bryant v. Bryant*, 125 Wn.2d 113, 882 P.2d 169 (1994); *see also Moss v. Vadman*, 77 Wn.2d 396, 463 P.2d 159 (1970) (en banc) (agency relationships are a long-established part of Washington common law).

There is no restriction on an attorney-in-fact signing the beneficiary declaration. *See Knecht v. Fid. Nat. Title Ins. Co.* 2013 WL 7326111 (W.D. Wash. Mar. 11, 2013)[20]; *US Bank Nat. Ass'n v. Woods*, 2012 WL 2031122 (W.D. Wash. Jun. 6, 2012); *Spenser v. Deutsche Bank*, 2011 WL 6816343 (W.D. Wash. Dec. 28, 2011) (Deutsche Bank "through its agent BAC Home Loans… executed a beneficiary declaration….").

The *Woods* opinion is directly on-point with respect to this issue and even involved the same parties. In *Woods*, the Hon. Judge Settle stated:

> [l]enders have submitted evidence to show that NWTS is in possession of a declaration signed by Wells Fargo *as 'attorney in fact'* for U.S. Bank…. Borrowers have failed to submit any evidence to show how Lenders have failed to show sufficient proof that the beneficiary is the owner of the promissory note secured by the deed of trust. Accordingly, *Borrowers' claim brought under RCW § 61.24.030(7)(a) is without merit.*

*Id.* at *6 (emphasis added). Thus, when Wells Fargo executed the declaration, it was *legally the same* as someone at U.S. Bank signing that document. *See also Richard v. Deutsche Bank Nat. Trust Co.*, 2012 WL 1082602 (D. Or. Mar. 30, 2012), *citing* 3 Am.Jur.2d Agency § 18 (2012) ("Generally, a person may appoint an agent to do the same acts and to achieve the same legal consequences by the performance of an act as if he or she had acted personally.").

Moreover, the Meyers were not sent a copy of the beneficiary declaration, nor is that document recorded as part of the non-judicial process. Appx. 76. It is inconceivable that they were prejudiced or injured from something never seen or relied on.

The outcome of this case ought to mirror *Trujillo* because the Meyers did not submit any

---

[20] In *Knecht*, the Hon. Judge Jones stated:
> [a]n AHMSI representative signed the document in which DB [Deutsche Bank] purports to appoint Fidelity as a successor trustee, stating that AHMSI was DB's 'attorney in fact.' Mr. Knecht complains that there is no recorded power-of-attorney document establishing AHMSI's right to act on DB's behalf, but he points to no authority requiring AHMSI to record such a document. He also fails to establish his own standing to object to AHMSI's acting on DB's behalf.

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 15 OF 30

**RCO**
**LEGAL, P.S.**

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

evidence calling the beneficiary declaration's validity into question.[21]  The bankruptcy court recognized that Wells Fargo was fully authorized to sign documents for U.S. Bank; the legal effect of doing so was equivalent to U.S. Bank itself executing the beneficiary declaration. Appx. 21:11-16 (M.D.).  As a result, NWTS was entitled to depend on this sworn averment, and it was error for the bankruptcy court to have required that NWTS establish "proof that Wells Fargo had authority to execute that declaration on behalf of U.S. Bank."  Appx. 22:2-3 (M.D.).

### 3.    NWTS Did Not Violate the DTA Through Reliance on the Loss Mitigation Declaration.

A notice of default issued under RCW 61.24.030(8) must include a declaration from the beneficiary or its authorized agent that it has contacted the borrower, it has tried with due diligence to contact the borrower, or the borrower has surrendered the property to the trustee, beneficiary, or authorized agent.  RCW 61.24.031(2).  "Unless the trustee has violated his or her duty… [of good faith], the trustee is entitled to rely on the declaration as evidence that the requirements of this section have been satisfied, and the trustee is *not liable* for the beneficiary's or its authorized agent's failure to comply with… this section."  *Id.* (emphasis added).

The Bankruptcy Court concluded that NWTS was *not* entitled to rely on this declaration because it did not verify the information referenced in the document.[22]  The Court stated that NWTS failed to take "any action to verify the information referenced in the Loss Mitigation Form."  Appx. 10:13-15 (M.D.).  The DTA, however, does not command such action be taken. Absent evidence showing a lack of good faith, nothing more is required from the trustee.

While the DTA does not specifically define a trustee's good faith duty, case law

---

[21] *See* Appx. 229 at 36:11-17 ("Q.  Throughout the complaint, Mr. Meyer, it asserts that Northwest Trustee acted without the authority of the true and lawful holder and owner of the promissory note and deed of trust.  Who was that true and lawful holder and owner during the foreclosure?  A.  I don't know.").

[22] It is important to note that the Loss Mitigation Form is both accurate and valid.  The bankruptcy court is mistaken that ASC had no authority to sign the document and that ASC did not contact the Meyers prior to NWTS issuing the Notice of Default.  Appx. 22:16-23:6 (M.D.).  U.S. Bank Vice President John Richards testified that the loan servicer was charged with managing the loan under the Trust Agreement and could act on behalf of U.S. Bank. Appx. 209-211 at 117:11-124:4.  Furthermore, Mr. Meyer testified that ASC contacted him and Mrs. Meyer multiple times and that he attempted to reach a resolution to the foreclosure with ASC, all prior to the Notice of Default's issuance.  Appx. 221-222 at 200:23-202:3; Appx. 226 at 226:15-228:1.

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 16 OF 30

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

discusses the scope. Under RCW 61.24.010(4), acting in good faith includes taking "reasonable and appropriate steps to avoid sacrificing the debtor's interest in the property." *Albice v. Premier Mortgage Servs. of Wash.*, 157 Wn. App. 912, 934, 239 P.3d 1148 (2010) *aff'd*, 174 Wn.2d 560, 276 P.3d 1277 (2012).[23]  "Good faith" is also the "absence of intent to defraud or to seek unconscionable advantage."  *See* Black's Law Dictionary, 701 (7th ed. 1999); *see also Indus. Indem. Co. of the Northwest, Inc. v. Kallevig,* 114 Wn.2d 907, 792 P.2d 520 (1990).  It does *not* mean "neglecting to identify the true holder of the promissory note when it was assigned." *Zalac v. CTX Mortgage Corp.*, 2013 WL 1990728 (W.D. Wash. May 13, 2013).

No statute directs a trustee to investigate the validity of a foreclosure and its related documents.  If the Legislature so intended, it would have specifically included such a requirement during any of the myriad versions to the DTA throughout the past several years.

Here, NWTS complied with the DTA.  When NWTS received the Loss Mitigation Declaration, there was no reason to doubt its accuracy or validity.  NWTS knew that ASC and the Meyers were in contact concerning foreclosure alternatives.  Appx. 206-207 at 97:22-98:11; Appx. 217-218 at 69:15-70:12.  There was no evidence that NWTS failed to act in good faith throughout the entire foreclosure process.  As a result, NWTS fulfilled its duty under the DTA and was entitled to rely on the Loss Mitigation form executed and provided by ASC.

### 4. The Bankruptcy Court Improperly Considered the Deposition Testimony of John Kennerty.

The bankruptcy court cites to testimony from a deposition of ASC Vice President John Kennerty in a *different lawsuit* for the proposition that he "had no personal knowledge of the statements" in the beneficiary and loss mitigation declarations.  Appx. 23:2-3 (M.D.).  The bankruptcy court admitted a complete transcript of Mr. Kennerty's deposition over NWTS' objections.  Appx. 204 at 15:16-17:8; Appx. 234-235 at 105:15-107:3; *see also* Appx. 195-196.

---

[23] When the Legislature changed a trustee's responsibility into one of "good faith," it singled out an aspect of the *former, broader* fiduciary duty.  *See Thepvongsa v. Reg'l Tr. Servs. Corp.*, 2011 WL 307364 (W.D. Wash. Jan. 26, 2011) (61.24.010(3) was "intended to address ambiguities regarding the duties of trustee after the Washington Supreme Court imposed dual {and in many ways competing} obligations in *Cox*."); *see also* RCW 61.24.010(3).

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Former testimony may be admitted as non-hearsay if a declarant is "unavailable as a witness" and the testimony is offered against a party who had "an opportunity and similar motive to develop it" through examination.  Fed. R. Evid. 804(a), (b)(1)(B); *see also In re Namvar*, 2014 WL 1599423 (9th Cir. Apr. 22, 2014) (testimony inadmissible when party not represented at deposition); *In re Barrup*, 53 B.R. 215 (Bankr. D. Vt. 1985) (testimony inadmissible when no effort other than subpoena was pursued to obtain witness' attendance).[24]

Here, the Meyers' presented no evidence that Mr. Kennerty was unavailable as a witness.  Rather, the bankruptcy court *sua sponte* inferred that he "appears to be beyond the subpoena power of the court."  Appx. 204 at 15:16-17.  This assumption alone does not satisfy the "unavailability" standard set forth in the Evidence Rule.  *See* Fed. R. Evid. 804(a).

Additionally, NWTS did not have an opportunity and similar motive to develop Mr. Kennerty's testimony in the *Geline* case.  First, NWTS was not present at the deposition.  *Id.*; *see also* Appx. 202 (identifying participating parties).  Second, the plaintiff in *Geline* did not allege damages against NWTS and had agreed to dismiss NWTS from the action, so there was no reason to attend that proceeding.  *See Geline v. NWTS, et al*., King County Superior Court Case No. 09-2-46576-2, Dkt. 54.[25]  Finally, Mr. Kennerty's deposition pre-dated his execution of the declarations relied upon in this case.  There was no evidence linking his earlier testimony to these declarations, just speculation without any foundation.  Appx. 204 at 16:21-17:8.  Based on these facts, the bankruptcy court's admission of Kennerty's deposition violated the standard in Fed. R. Evid. 804(b)(1)(B) and this testimony should not have been used against NWTS.

But even if Mr. Kennerty's collateral testimony was properly deemed admissible against NWTS, the record shows that he had the requisite authority to sign declarations on behalf of

---

[24] "Whether a witness is unavailable is not to be decided on the basis of the physical absence from the courtroom of the witness on the date of hearing, but rather on the basis of the relationship and disposition of the witness to the party calling him.  The test is generally whether the witness is susceptible of being compelled to attend, not whether his presence was, in fact, procured on a particular occasion."  *Barrup* at 219.

[25] Judicial notice may be taken of documents filed and orders or decisions entered in federal *or state court.  See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002).

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   ASC/Wells Fargo.  Appx. 212 at 216:13-14 ("Q.  Did Mr. Kennerty have that authority in June

2   of 2010?  A.  As VP of loan documentation, yes, he would have.").  Based on prior

3   communications with Mr. Kennerty, NWTS had no reason to question his authority to sign either

4   the beneficiary or loss mitigation declaration.  Appx. 215-216 at 37:12-38:10.  The bankruptcy

5   court erred in permitting introduction of the *Geline* deposition, but regardless, it should not have

6   served to defeat NWTS' ability to rely on the ASC declarations.

7       **E.   The Deed of Trust Act ("DTA") Does Not Prohibit a Trustee From Listing**
        **The Loan Servicer's Address In a "c/o" Capacity For The Note Owner In**
8       **The Notice of Default.**

9           A notice of default must include "the name and address of the owner of any promissory

10  notes or other obligations secured by the deed of trust and the name, address and telephone

11  number of a party acting as a servicer of the obligations secured by the deed of trust."  RCW

12  61.24.030(8)(l).  The notice also provides the name and address of the owner of the loan, but *not*

13  *a phone number*.  The phone number is *only* required for the *servicer* of the loan, which NWTS

14  included in the Notice of Default.  Therefore, the bankruptcy court was completely in error to

15  conclude that "despite the simple direction of the statute…, NWTS failed to include [a]… phone

16  number for either U.S. Bank or GEL2."  Appx. 20:13-14 (M.D.).

17          The Bankruptcy Court also wrongfully held that NWTS violated the DTA because it

18  included the servicer's address and phone number as the same contact information for the owner.

19          First, it was futile for NWTS to provide a distinct address for GEL2 because *it has no*

20  *physical location*.  The bankruptcy court's characterization of the loan trust supplies ample

21  evidence why listing the address for a note owner would be unhelpful, if not counterproductive,

22  to the Meyers.  The court states:  "GEL2, as a trust, is not an operating entity.  It has no

23  employees, no office, and acts solely through its trustee, U.S. Bank."  Appx. 4:9-11 (M.D.).

24  Moreover, John Richards, Vice President of U.S. Bank, testified at trial that the Trust Agreement

25  appoints U.S. Bank as the trustee of GEL2, but U.S. Bank serves only as legal title holder while

26  the loan servicer is charged with managing the trust.  Appx. 209-211 at 117:11-124:4.  Thus, it

**RCO**
**LEGAL, P.S.**

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

was reasonable for NWTS to include the owner's information "c/o" the servicer because the servicer was charged with managing the loan. *See In re Butler*, *supra.* at 22:4-14 (no allegation of inaccuracy in contact information resulted in no violation of RCW 61.24.030(8)(l)).

Second, not only was the information in the Notice of Default accurate, but it allowed the Meyers to connect with the entity best-situated to answer their questions and/or concerns regarding the foreclosure, including options to pursue an alternative outcome. Appx. 220 at 159:24-160:1 ("I would call into the [ASC] phone number, and I would be transferred to a Wells Fargo -- I would end up with Wells Fargo."); Appx. 225 at 218:21-219:3 (Q. Did you discover that ASC is a division of Wells Fargo Bank? A. They're affiliated, I know that….").

At trial, the Meyers testified they previously communicated with the loan servicer prior to receiving the Notice of Default. Appx. 221-222 at 200:23-202:3; Appx. 226 at 226:15-228:1. They testified they were aware of the servicer's identity and why they were being contacted. *Id.* By providing the loan servicer's name, address and telephone number in the Notice of Default, the Meyers were afforded a direct channel for assistance to remedy their default. *See* Appx. 224 at 215:7-9 ("Q. And you were asking Wells Fargo to modify your loan; is that right? A. Yes.").

Third, ownership of a note is irrelevant in a non-judicial foreclosure. *See Trujillo*, *supra.* at *10. The failure to include *different* contact information for the owner and servicer cannot be a material, prejudicial error where the borrowers make payments to a servicer and not the owner. The Meyers suffered no harm from the inclusion of the servicer's address and phone number.

In sum, the DTA does not compel a trustee to provide discrete contact information for a note owner and loan servicer. NWTS *did* provide the Meyers with an address and phone number, and the former information being "c/o" Wells Fargo was not a violation of any statutory or common law requirement. Accordingly, the bankruptcy court incorrectly found that NWTS failed to "include accurate information in the Notice of Default…." Appx. 20:20-21 (M.D.).

## F.      NWTS Did Not Violate the CPA.

The entirety of the damages awarded against NWTS herein was based on its violation of

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 20 OF 30

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

the CPA.  Appx. 29:5-16 (M.D.).  The elements of a CPA violation are not present in this case.

A CPA violation requires:

> (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation.

*Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885, 889 (2009), *citing*

*Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 784, 719 P.2d 531 (1986).

The failure to meet any one of these elements is fatal and necessitates dismissal.  *Sorrel v. Eagle*

*Healthcare*, 110 Wn. App. 290, 298, 38 P.3d 1024 (2002).

### 1.   There Was No Unfair or Deceptive Practice Affecting the Public.

CPA liability requires an act or practice with either: 1) "a capacity to deceive a

substantial portion of the public," or 2) that "the alleged act constitutes a per se unfair trade

practice."  *See Saunders v. Lloyd's of London*, 113 Wn.2d 330, 779 P.2d 249 (1989), *quoting*

*Hangman Ridge*, *supra*; *see also* RCW 19.86.093.  "Implicit in the definition of 'deceptive'

under the CPA is the understanding that the practice misleads or misrepresents something of

material importance."  *Holiday Resort Comm. Ass'n v. Echo Lake Assoc., LLC,* 134 Wn. App.

210, 135 P.3d 499 (2006).  An "act performed in good faith under an arguable interpretation of

existing law does not constitute unfair conduct violative of the consumer protection law."  *Leingang*

*v. Pierce Co. Med. Bureau, Inc*., 131 Wn.2d 133, 930 P.2d 288 (1997).

The record shows that none of NWTS' actions were contrary to a specific statute which

gives rise to a *per se* CPA violation.  *Accord In re Brown*, 2013 WL 6511979 (B.A.P. 9th Cir.

Dec. 12, 2013) (DTA contains a list of *per se* violations which do not include plaintiff's

allegations); *Babrauskas v. Paramount Equity Mtg.*, 2013 WL 5743903 (W.D. Wash. Oct. 23,

2013) ("Plaintiff offers no support for his theory that a violation of the DTA is a per se violation

of the CPA").[26]  Thus, the only method by which the Meyers could establish a CPA cause of

---

[26] The CPA claim pled in the *Brown* Second Amended Complaint – and ultimately dismissed – contained similarly conclusory allegations to those made in this case.  *Compare* Appx. 183-184 (SAC, ¶¶ 5.2-5.6), Case No. 11-01056-TWD, Dkt. No. 49, ¶¶ 6.2-6.5 (Bankr. W.D. Wash. Feb. 22, 2011).

**RCO**
**LEGAL, P.S.**

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

action was to show that NWTS engaged in conduct with a capacity to deceive a substantial portion of the public. *See Saunders, supra.* at 344, *quoting Hangman Ridge* at 785.

The bankruptcy court tied CPA liability to the aforementioned DTA issues, finding that NWTS "failures… under the [DTA] in this case" constituted unfair and deceptive acts. Appx. 24:25-26; 27:3-5 (M.D.). But, as discussed above, the bankruptcy court's reasoning deviates from both federal and state court decisions interpreting the DTA.

First, the bankruptcy court was mistaken that U.S. Bank did not declare the Meyers in default. Appx. 25:23-24 (M.D.). U.S. Bank fully authorized ASC/Wells Fargo to invoke that a default occurred, and the Meyers *were actually in default under the loan's terms*. Appx. 210 at 121:5-25 (trust agreement powers permit servicer to effectuate foreclosure); Appx. 213 at 231:15-232:3 (Wells Fargo has authority to declare default for U.S. Bank); Appx. 232 at 88:9-13 (Meyers were in default); *id.* at 89:16-23 (same). No statute or contractual provision in either the Note or Deed of Trust required that the Meyers receive a "formal notice of default from their lender prior to their receipt of the Notice of Default…." Appx. 26:2-3 (M.D.). And even if such requirement existed, the burden would be on the lender or servicer, not the trustee, to fulfill this notification. Because NWTS was allowed to issue the Notice of Default as it had already been appointed successor trustee, nothing about that document – including the mention of an agency relationship – was unfair or deceptive to the Meyers.

Second, NWTS was entitled to rely on the loss mitigation and beneficiary declarations pursuant to the respective statutes which permit reliance unless otherwise failing to act in good faith. *See* RCW 61.24.030(7)(b), RCW 61.24.031(2); *see also Trujillo*, *supra*. The bankruptcy court's invention of a duty to "confirm the authority of U.S. Bank and Wells Fargo to initiate foreclosure" is unsupported by any precedent or reading of the DTA. Appx. 26:19-20 (M.D.).

Third, listing the loan owner's address "c/o" the servicer is not unfair or deceptive because GEL2 had no employees or address, and the loan was maintained by Wells Fargo as servicer. Appx. 4:9-11 (M.D.) (bankruptcy court findings concerning GEL2); Appx. 210 at

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 22 OF 30

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

119:3-121:25 (duties of Wells Fargo).  While some borrowers might be, in the bankruptcy

court's words, "perplexed" by a change in their lender or servicer, this fact in no way alters their

obligations under a note.  Appx. 25:8:10 (M.D.).  Further, the bankruptcy court's finding that the

Meyers possessed "no way" to "verify the information in the Notice of Default except through

the servicer ASC" does not import liability onto NWTS, as the Meyers *could and did contact*

*their loan servicer.*  Appx. 25:14-18; Appx. 220 at 159:22-160:2; Appx. 221 at 200:15:18; *but*

*see* Appx. 224 at 217:19-218:6 (Mr. Meyer did not recall if he even called the phone number in

the Notice of Default).[27]  The note owner would not have been able to provide any meaningful

information to the Meyers.  Appx. 210 at 119:3-15 (all day-to-day operations are conducted by

the servicer).  The bankruptcy court erred in holding that NWTS should have used "common

sense" to offer an "additional explanation" of the beneficiary's identity.  Appx. 25:12-14.

Simply put, there was nothing unfair or deceptive about NWTS carrying out its

proscribed duties as successor trustee.  *See Rouse v. Wells Fargo Bank, N.A.*, 2013 WL 5488817

(W.D. Wash. Oct. 2, 2013), *appeal dismissed.*[28]

### 2.      There Was No Public Interest Impact.

"The public interest in a private dispute is not inherent."  *Tran v. Bank of America,* 2013

WL 64770 (W.D. Wash. Jan. 4, 2013), *citing Hangman Ridge*, *supra.* at 790; *see also Segal Co.*

*(Eastern States), Inc. v. Amazon.com*, 280 F.Supp.2d 1229, 1234 (W.D. Wash. 2003) (granting

motion to dismiss CPA claim as allegation "on information and belief that defendant engages in a

'pattern and practice' of deceptive behavior" is insufficient to meet public interest requirement); *but*

*see Bain v. Metro. Mtg. Grp., Inc.*, 175 Wn.2d 83, 118, 285 P.3d 34 (2012) ("*considerable*

*evidence* that MERS is involved with an enormous number of mortgages in the country (and our

---

[27] Because the Meyers had the servicer's contact information at all relevant times, NWTS did not engage in actions
that "forced" the Meyers to hire an attorney to prepare a "QWR" to the loan servicer to get the address of the owner
because, as explained below, a QWR accomplishes an entirely different purpose.  Appx. 26:4-5.

[28] *See also* Appx. 230 at 39:6-12 ("Q.  What false and misleading representations did Northwest Trustee specifically
make to you? A.  Who's Jeff Stenman? Q.  Okay.  So you don't know who Jeff Stenman is.  Anything else? A.
No."); Appx. 228-229 at 33:22-35:24 (only the Assignment of Deed of Trust and Appointment of Successor Trustee
– neither of which NWTS executed – were "false and unauthorized" for purposes of the Meyers' CPA claim).

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 23 OF 30

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

state), perhaps as many as *half nationwide*.") (emphasis added).  As the Hon. Judge Lasnik stated in *McCrorey v. Fed. Nat. Mtg. Ass'n*, 2013 WL 681208 (W.D. Wash. Feb. 25, 2013), "[t]he purpose of the CPA is to protect consumers from harmful practices, which is why plaintiff must allege an actual or potential impact on the general public, not merely a private wrong."

Each of the alleged acts the Meyers claimed exclusively relate to conduct directed at them personally, *i.e.*, whether NWTS had authority to commence foreclosure of the Property, whether NWTS properly issued the Notice of Default, whether NWTS could rely on declarations provided by the loan servicer.  These acts did not, and could not, have the capacity to deceive other individuals, let alone a substantial portion of the general public.  Importantly, the Meyers offered *no testimony whatsoever* on how the public was likely affected by NWTS' conduct in their foreclosure.

Yet, the bankruptcy court found that NWTS' reliance on information provided with the foreclosure referral necessarily imputed a public interest impact to all "homeowners."  Appx. 27:13-25 (M.D.).  No evidence supports this conclusion because the Meyers did not meet their burden of proving the public interest prong.

### 3.     NWTS Did Not Cause Injury to the Meyers.

#### a.     Identification of the Alleged Injuries.

CPA liability requires a causal link between the alleged misrepresentation or deceptive practice and the purported injury.  *Hangman Ridge*, *supra* at 793.  On causation, the Washington Supreme Court instructs that if the expense would have been incurred regardless of whether a violation existed, causation is not established.  *See Panag*, *supra*. at 64.  A plaintiff must prove that the "injury complained of… would not have happened" if not for defendant's acts.  *Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 82, 170 P.3d 10 (2007).

The Supreme Court, in *Bain*, cited to *Bradford v. HSBC Mortgage Corp.*, 799 F.Supp.2d 625 (E.D. Va. 2011), for an example of an injury in the foreclosure context.  175 Wn.2d at 119.  In *Bradford*, three different companies attempted to foreclose on Bradford's property after he

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 24 OF 30

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

attempted to rescind a mortgage under the federal Truth in Lending Act.  All three companies claimed to hold the promissory note.  Observing that "[i]f a defendant transferred the Note, or did not yet have possession or ownership of the Note at the time, but nevertheless engaged in foreclosure efforts, that conduct could amount to a [Fair Debt Collection Practices Act, 15 U.S.C. § 1692k] violation."  *Id.*  There was nothing like the harm in *Bradford* alleged here.

As the Ninth Circuit recently held concerning a CPA claim in the foreclosure context:

> Plaintiffs' foreclosure was not caused by a violation of the DTA because Guild [the foreclosing entity] was both the note holder and the beneficiary when it initiated foreclosure proceedings, and therefore the 'cause' prong of the CPA is not satisfied.

*Bhatti v. Guild Mtg. Co.,* 2013 WL 6773673, *3 (9th Cir. Dec. 24, 2013).  In the same way, none of the Meyers' purported injuries were proximately caused by NWTS.  *See Mickelson v. Chase Home Fin. LLC*, 2014 WL 2750133 (9th Cir. Jun. 18, 2014);[29] *Massey v. BAC Home Loans Servicing LP*, 2013 WL 6825309 (W.D. Wash. Dec. 23, 2013), *citing Babrauskas v. Paramount Equity Mortgage*, *supra.* (plaintiff's failure to meet obligation "is the 'but for' cause of the default" and foreclosure), *McCrorey v. Fed. Nat. Mortg. Ass'n*, *supra.* (plaintiffs' failure to pay led to default and foreclosure).

NWTS issued the foreclosure notices only *after* the Meyers failed to make their loan payments, and it was the Meyers' default that precipitated the commencement of foreclosure.  Despite this lack of causation, the bankruptcy court determined that NWTS caused the Meyers to suffer injury and "pursue additional information concerning their loan and… to file a bankruptcy proceeding…."  Appx. 28:24-28, 29:1-2 (M.D.).  As a result, the bankruptcy court assessed damages against NWTS in four categories.

First, the Meyers were awarded $980 for legal fees paid to their attorney for issuing a

---

[29] In *Mickelson*, the Ninth Circuit stated:

> The Mickelsons allege that NWTS failed to secure adequate proof that Chase owned the note.  *See* Wash. Rev.Code § 61.24.030(7).  Chase actually held the promissory note during the relevant period.  For this reason, even if the Mickelsons were correct that Chase's beneficiary declaration was inadequate under Washington Revised Code § 61.24.030(7)(a), any such failing could not have prejudiced them….

2014 WL 2751033 at *1, *citing Udall v. T.D. Escrow Servs., Inc.,* 159 Wn.2d 903, 154 P.3d 882 (2007).

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 25 OF 30

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

purported Qualified Written Request ("QWR") to determine the name and contact information of the Note's holder and owner. Appx. 14:18-22 (M.D.).[30] Second, the Meyers were awarded $3,500 for attorneys' fees and $274 for filing fees related to their bankruptcy petition.[31] Appx. 15:3-4. Third, the Meyers were awarded $10,380 for rent between July through October 2013, $2,245 for a rental security deposit, $300 for a pet deposit, and moving expenses of $2,625. Appx. 15:6-22 (M.D.). Fourth, the bankruptcy court gave the Meyers $3,200 for estimated value of their time off from work to attend "multiple mediations and hearings." Appx. 15:6-22 (M.D.). The damages based on the Meyers' CPA claim were ordered as $23,504. Appx. 29:13. Trebling resulted in a total award of $48,504. *Id.*, *citing* RCW 19.86.090; Appx. 31:10-13 (M.D.).

### b.   NWTS Did Not Cause the Meyers to Send a Supposed QWR.

The bankruptcy court stated that:

> [b]ut for the failure of NWTS to provide the information in the Notice of Default as required by the DTA and to exercise independent judgment, the Meyers would not have been forced to incur the expense of retaining Mr. Jones to pursue additional information concerning their loan and Mr. Feinstein to file a bankruptcy proceeding in order to stop a foreclosure which was improperly instituted as to their Residence.

Appx. 28:24-29:03 (M.D.); *see also* Appx. 14:18-15:4 (M.D.).

A QWR has nothing to do with foreclosure or the foreclosure trustee. *See* 12 U.S.C. §2605(e)(3) (RESPA requirements for the servicing of mortgage loans). A *loan servicer* must respond to a borrower's QWR seeking information. 12 U.S.C. § 2605(e)(1). RESPA defines a QWR as a written correspondence that "[¶] (ii) includes a statement of the reasons for the belief of the borrower… that the account is in error or provides sufficient detail to the servicer regarding other information sought…." 12 U.S.C. § 2605(e)(1)(B) (emphasis added); *see also Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 156 Cal. Rptr. 3d 912 (2013).

Because the QWR is necessarily directed to the loan servicer as a matter of law, *and not*

---

[30] "Through Mr. Jones, by letter dated December 17, 2010, the Meyers issued a [QWR] under the Truth in Lending Act, directed at ASC, in order to determine the holder and owner of the Note." Appx. 12:7-9 (M.D.).

[31] The bankruptcy was allegedly designed to stop what they believed was an unlawful foreclosure action against their residence. Appx. 14:22-24, 15:3-4 (M.D.).

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 26 OF 30

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

*the trustee*, it makes no sense to charge NWTS $980 for the Meyers' attorney's cost of sending the QWR to ASC. Appx. 15:2 (M.D.). The Meyers contended that NWTS' failure to provide the actual address of the note owner necessitated them having to send the servicer a QWR, but a review of the so-called QWR itself dispels this claim. Appx. 138-159. The 22-page letter raises dozens of issues concerning the loan, largely having to do with the payments, loan origination and servicing, but *nothing* concerning an identification of the note owner. *Id.*

Further, the Meyers never explained why knowing who owned their loan – as opposed to who was servicing the loan, which they knew to be ASC/Wells Fargo – was of any material significance. Who *owns* their debt is of no valid concern to the Meyers, as their obligations under the Note and Deed of Trust remain the same no matter where an ownership interest resides. The Meyers did not argue that they faced conflicting demands from more than one creditor on the same debt. *See Jenkins*, *supra*.[32]; *Marques v. Fed. Home Loan Mtg. Corp*. 2012 WL 6091412, *5 (S.D. Cal. 2012) ("Regardless of which party held the Deed of Trust, Plaintiffs were still obligated to make payments. '[T]he only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice'."); *see also In re Veal*, 450 B.R. 897, 912 (B.A.P. 9th Cir. 2011) ("[T]he [borrower] should be indifferent as to who owns or has an interest in the note").

No acts of NWTS caused the Meyers' to issue a QWR, and so $980 should not have been charged against NWTS. Appx. 15:2 (M.D.).

### c.   NWTS Did Not Cause the Meyers' Bankruptcy Filing.

The Meyers had substantial debt besides their mortgage loan; they owed on two auto loans (Schedule D) and numerous unsecured creditors, with roughly 68 accounts, and a cumulative debt of $105,681.42 (Schedule F). *See* Appx. 94, 97-110 (bankruptcy schedules).

The Fourth Amended Chapter 13 Plan that the Meyers confirmed on August 19, 2011

---

[32] "Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note." *Jenkins*, *supra*. at 515.

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 27 OF 30

**RCO**
**LEGAL, P.S.**

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

allows them to make monthly payments of just $450 per month over 60 months for both their automobile loan debt, with the unsecured debt of $105,681.45 receiving just $15,445.80, *i.e.*, 15% of their claims. *See* Appx. 131-136 (Plan, Sect. II A, B; Sect. III; Sect. IV, ¶ E – Nonpriority Unsecured Claims; Appx. 137 (Order confirming Plan). The Meyers received a huge amount of debt forgiveness and a greatly reduced monthly payment through their chapter 13 bankruptcy filing. The dispute over their foreclosure was not a factor in their bankruptcy, given that the mortgage debt was removed altogether from the plan.

No acts of NWTS caused the Meyers to file bankruptcy, and so NWTS should not be charged for the Meyers' expense of $3,500 in attorneys' fees and $274 in filing fees related to their bankruptcy case. Appx. 15:3-4 (M.D.).

> **d.    NWTS Did Not Cause the Meyers to Incur Rent, Deposits, and Moving Expenses.**

The bankruptcy court found that the Meyers had to incur expenses moving into a rental house to avoid the uncertainty associated with multiple notices of trustee's sale. Appx. 14:24-26 (M.D.). The Meyers moved into a rental house in July of 2013, but NWTS' issuance of foreclosure notices did not precipitate their decision. Appx. 230 at 41:8-22 (none of the sale notices caused their move); Appx. 231 at 42:4-8 ("Q. Who told you to move out? A. Myself. Q. Did the court order allowing the sale to proceed lead to you moving out? A. Yes."); Appx. 233 at 94:19-95:1 (Q. "Is there anything, other than the mere fact that you received these notices, that [NWTS] did to you to cause you injury?".... Q. Is all of the injury that you're claiming based on the receipt of these notices or anything else? A. I don't know....").

The evidence shows that the Meyers' move occurred nearly two years after the Meyers' stipulated (in June 2011) to allow U.S. Bank to foreclose on the Property, and after the Meyers' amended their bankruptcy plan to remove the loan. A plan without the mortgage was confirmed on August 19, 2011. Appx. 137. When considering a move two years later, in 2013 – a logical decision given an expectation of foreclosure – the Meyers agreed to give up the Property. Appx.

OPENING BRIEF OF APPELLANT NWTS
CASE NO. 14-00297-RSM
PAGE 28 OF 30

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

230 at 40:10-16 ("Q.  So for almost four years you lived in the property and didn't make a single monthly mortgage payment to anybody?  A.  That's correct.  Q.  And you wouldn't deny that being in default should lead to foreclosure of the property, right?  A.  Not at all.").  There is no nexus between any acts of NWTS and the Meyers' later decision to move out of the Property and pay rent of $2,595 per month.  *Cf.* Appx. 15:13-14 (M.D.).

The bankruptcy court charged NWTS for the Meyers' security deposit of $2,245 and a pet deposit of $300.  *Id.*  However, a deposit is not a cost because the money is returned to the tenant upon their faithful performance under the rental agreement.  *See, e.g.*, RCW 59.18.260.  A deposit in no way can be deemed an element of damages, as these funds will be returned to the Meyers, and NWTS should not have to reimburse the Meyers for their various deposits.

The bankruptcy court also charged NWTS for the Meyers' moving expenses of $2,625.  Appx. pg. 15:15-17 (M.D.).  It is specious to suggest a nexus between any act of NWTS and the moving costs, and they should not have been assessed against NWTS as damages.

Finally, the bankruptcy court charged NWTS with $3,200 representing the Meyers' time off from work to attend "multiple mediations and hearings."  Appx. 15:18-19 (M.D.).  But because an award under the CPA is *strictly limited* to damage "in… business or property…," lost wages are not compensable under the CPA.  RCW 19.86.090; *see also Ambach v. French*, 167 Wn.2d 167, 216 P.3d 405 (2009); *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons*, 122 Wn.2d 299, 858 P.2d 1054 (1993).  Once again, there was no nexus between any act of NWTS and the Meyers' time off and lost wages, which are not compensable under the CPA in any event, so these amounts should not have been assessed against NWTS as damages either.

All of the asserted injuries that the Meyers sought to connect to NWTS' conduct as trustee were, in fact, attributable to their default, their stipulation to relief from stay, and their decision to move after such relief was granted.  The bankruptcy court impermissibly found NWTS caused the Meyers injury, and unjustly assessed a host of damages against NWTS due to this conclusion.  The verdict on the Meyers' CPA cause of action must be overturned.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## VII.   CONCLUSION

The Meyers' allegations in this case conspicuously downplayed their failure to make loan payments for *four years* all while knowing that foreclosure was an appropriate remedy for their default.  Day 2: 198:12-19; Day 3, 40:4-16.  During this entire period of time while the Meyers used and enjoyed the Property at no cost, they knew precisely who to pay and who had authority to both modify and enforce their loan obligation.  Day 2, 200:11-18.

When the Meyers filed bankruptcy, they failed to advance *any* of the claims which formed the basis for their eventual lawsuit.  As a result, the doctrine of judicial estoppel should have barred the entire litigation, and the bankruptcy court erred by not considering this issue.

Even if the Meyers' claims survived estoppel, however, the bankruptcy court also erred when it found that NWTS failed to comply with the DTA based on: 1) stating it was an agent in the Notice of Default while issuing it as the successor trustee, 2) relying on a referral and declarations without verifying the authority of U.S. Bank or ASC/Wells Fargo, and 3) including the loan owner's contact information "c/o" the loan servicer in the Notice of Default.  None of these actions were material breaches of NWTS' duties, nor were the Meyers prejudiced by them.

Lastly, the Meyers did not substantiate each element for a CPA claim; there was no unfair or deceptive act likely to affect the public, and NWTS did not cause their alleged injuries.  Given this failure of proof, the bankruptcy court should not have found CPA liability against NWTS.

Based on the foregoing reasons, the Judgment below should be reversed.

DATED this 10th day of July, 2014.

**RCO LEGAL, P.S.**

By: /s/ Joshua S. Schaer, /s/ Steven K. Linkon,
/s/ Heidi Buck Morrison
Joshua S. Schaer, WSBA #31491
Steven K. Linkon, WSBA #34896
Heidi Buck Morrison, WSBA No. 41769
Attorneys for Appellant NWTS

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

2

**CERTIFICATION OF BRIEF SIZE**

Appellant NWTS hereby certifies that this brief complies with the type-volume limitation

set forth in Fed. R. App. 32(a)(7)(B)(i), (iii).  According to the word-processing system used to

prepare this brief, the Opening Brief of Appellant NWTS contains 11,867 words, and 858 lines

of text, excluding the table of contents, table of citations, and addendum pursuant to Fed. R.

Bankr. P. 8010(b).

**RCO LEGAL, P.S.**

By: /s/ Joshua S. Schaer, /s/ Steven K. Linkon,
/s/ Heidi Buck Morrison
Joshua S. Schaer, WSBA #31491
Steven K. Linkon, WSBA #34896
Heidi Buck Morrison, WSBA No. 41769
Attorneys for Appellant NWTS

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131