01

02

03

04

05
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

06

07
PETER J. MEYER AND SHAREE L.
MEYER, husband and wife;

Case No. 14-00297RSM

08
                                    Appellee,

USBC, WAWB 14-S002

09
      v.

BK No. 12-01630-KAO

10
U.S. BANK NATIONAL ASSOCIATION AS
TRUSTEE FOR STRUCTURED ASSET

11
SECURITIES CORPORATION MORTGAGE
PASS-THROUGH CERTIFICATES, 2006-

ORDER REVERSING BANKRUPTCY
COURT

12
GE1, a federally chartered national bank;
AMERICA'S SERVICING COMPANY, a

13
Division of WELLS FARGO NA d/b/a WELLS
FARGO HOME MORTGAGE,   a National

14
Bank; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., a

15
Delaware corporation; and DOE
DEFENDANTS 1-10,

16

17
                                    Defendants,
            and

18
NORTHWEST TRUSTEE SERVICES, INC.,

19

20
Appellant
                              Defendants.

21

22

ORDER REVERSING BANKRUPTCY COURT - 1

01     This matter comes before the Court upon appeal by Defendant-Appellant Northwest

02  Trustee Services, Inc. ("NWTS") from the Bankruptcy Court for the Western District of

03  Washington's memorandum decision granting judgment in favor of Plaintiffs-Appellees Peter and

04  Sharee Meyer (the "Meyers"). Following bench trial, the Honorable Karen Overstreet awarded the

05  Meyers $72,008 plus costs and attorney's fees on their claims against NWTS for violation of

06  Washington's Deed of Trust Act and Consumer Protection Act. Having considered the briefs and

07  supporting exhibits of the parties and amicus curiae United Trustees Association ("UTA"),

08  together with the relevant record below, and having heard oral argument by the parties, the Court

09  REVERSES the Bankruptcy Court's judgment for the reasons stated herein.

10                                  **FACTUAL BACKGROUND**

11     On November 10, 2005, the Meyers executed an adjustable rate promissory note (the

12  "Note") in favor of Finance America LLC to secure a $425,000 loan. Bankruptcy Record, Case

13  No. 12-01630KAO ("BR"), Dkt. # 1, Ex. A. The Note was secured by a Deed of Trust (the

14  "Deed") against the Meyers' residential property in Snohomish, WA. *Id.* at Ex. B. The Deed

15  named Ocwen Loan Servicing as servicer, DCBL, Inc. as trustee, Finance America LLC as lender,

16  and Mortgage Electronic Registration Systems ("MERS") as beneficiary and nominee of the

17  lender. The Deed provided that the Note, together with the Deed, could be sold one or more times

18  without notice to the borrowers. *Id.* at ¶ 20. The Deed was recorded on November 18, 2005, and

19  the Meyers moved into their residence in January 2006 with their three children and began making

20  payments under the Note. Memorandum Decision, Dkt. # 145 ("MD"), p. 3.

21     In April 2006, the Note was transferred into a securitized trust, entitled Structured Asset

22  Securities Corporation Mortgage Pass-Through Certificates Series 2006-GELS2 ("GEL2"). MD

ORDER REVERSING BANKRUPTCY COURT - 2

01   at p. 3. The relevant details of this transaction include the following: First GEL2 is not an operating

02   entity and therefore lacks a physical address. Second, U.S. Bank National Association ("U.S.

03   Bank") served as Trustee of the trust, with America's Servicing Company ("ASC"), a division of

04   Wells Fargo Bank NA ("Wells Fargo"), acting as the loan servicer. The trial court determined

05   based upon a review of the evidence, that Wells Fargo held the Note as custodian for U.S. Bank,

06   which in turn served as Trustee for GEL2. MD at p. 5. Third, under the trust agreement, U.S. Bank

07   was authorized to execute powers of attorney in favor of any servicer to permit the servicer to

08   foreclose against any mortgaged property in GEL2, with actions in pursuit of foreclosure

09   delegated to the servicer under a Servicing Agreement. NWTS produced three separate Limited

10   Power of Attorney documents executed by U.S. Bank authorizing Wells Fargo to act as its

11   attorney-in-fact under the Servicing Agreement. MD at p. 26; Defendant-Appellant's Appendix

12   ("DA"), Dkt. # 12, pp. 61-66.

13         The Meyers continued to make the required payments of principal and interest under the

14   Note until they began to experience financial difficulties toward the end of 2008. Under the terms

15   of the Note, the Meyers agreed that failure to pay the full amount of each monthly payment on the

16   due date would put them in default. BR, Dkt. # 1, Ex. A, ¶ 7(B). The trial court could not determine

17   from the evidence presented at trial precisely when the Meyers initially defaulted or whether any

18   lender issued a formal notice of default. MD at p. 6.

19         On March 9, 2009, NWTS received its first referral to foreclose the Deed of Trust in the

20   form of a "Case Information Report" ("CIR") pulled from the third party website "Vendorscape."

21   MD at p. 6. According to Jeff Stenman, Foreclosure Manager for NWTS, NWTS has used

22   Vendorscape to access foreclosure information for at least a decade but has no procedures in place

ORDER REVERSING BANKRUPTCY COURT - 3

01  to verify the accuracy of the information. *Id.* Based on the information in the CIR, Stenman

02  executed an Assignment of Deed of Trust from MERS to U.S. Bank as Trustee for GEL2 on

03  March 10, 2009. Although Stenman was an employee of NWTS, he prepared and signed the

04  assignment as a Vice President of MERS pursuant to what he described as a tri-party agreement

05  between himself, Wells Fargo, and MERS. *Id.* at p. 7. The agreement was not produced at trial,

06  though the Assignment was recorded on July 1, 2009. *Id.*

07        On March 26, 2009, Anne Neely signed an appointment of NWTS as Successor Trustee.

08  DA at p. 72. The document identified Neely as a Vice President of Wells Fargo, acting as

09  attorney-in-fact for U.S. Bank, Trustee for GEL2. *Id.* The assignment was recorded July 1, 2009,

10  and incorrectly identified MERS as beneficiary, although MERS' interest had already been

11  assigned to U.S. Bank at the time. *Id.*

12        For undisclosed reasons, the 2009 foreclosure proceeding against the Meyers was

13  discontinued and a new proceeding initiated in 2010, following NWTS's receipt of a second CIR

14  from Vendorscape requesting commencement of foreclosure. MD at p. 8; DA at p. 277. Both the

15  2009 and 2010 CIRs incorrectly referenced the Note as non-adjustable and contained conflicting

16  representations of the principal balance and interest rate. MD at p. 8. NWTS nonetheless issued a

17  Notice of Default under the Meyers' Deed of Trust on July 9, 2010 based on information contained

18  in the 2010 CIR. DA at pp. 73-75. The Notice, which was taped to the Meyers' door, stated that

19  they would need to pay $82,035.65 in order to avoid foreclosure. *Id.*; MD at p. 11. Paragraph (K)

20  of the Notice provided the following contact details in accordance with RCW 61.24.030(8)(l):

21        (K) Contact Information for Beneficiary (Note Owner) and Loan Servicer

22        The beneficiary of the deed of trust is US Bank National Association, as Trustee for
        [GEL2], whose address and telephone number are:

ORDER REVERSING BANKRUPTCY COURT - 4

01

02          c/o America's Servicing Company
            MAC X7801-02T, 3476 Stateview Blvd
            Fort Mill, SC 29715
03          855-248-5719

04          The loan servicer for this loan is America's Servicing Company, whose address and
            telephone number are:
05
            MAC X7801-02T, 3476 Stateview Blvd
06          Fort Mill, SC 29715
            800-662-5014
07
DA at pp. 74-75. The Notice also identifies U.S. Bank, as Trustee for GEL2, as the "creditor to
08
whom the debt is owed" and refers to NWTS as the "authorized agent" for U.S. Bank. *Id.* at p. 75.
09
          In connection with the Notice of Default, NWTS provided a Foreclosure Loss Mitigation
10
Form and Beneficiary Declaration, pursuant to RCW 61.24, each dated June 24, 2010. DA at p. 76;
11
MD at p. 9. Both were signed under penalty of perjury by John Kennerty, though on the former he
12
was identified as "VP of Loan Documentation" for ASC, while on the latter he was identified as
13
"VP of Loan Documentation" for Wells Fargo as attorney-in-fact for U.S. Bank. *Id.* The
14
Beneficiary Declaration identifies U.S. Bank, as trustee for GEL2, as the holder of the Note. DA at
15
p. 76. Over NWTS's objection, the trial court admitted deposition testimony of Kennerty from a
16
separate proceeding involving NWTS, *Geline v. NWTS, et al.*, King Count Sup. Ct. Case No.
17
09-2-46576-2, in which Kennerty testified that he routinely signed such documents without
18
personal knowledge of any factual statements therein. MD at p. 10. The trial court determined that
19
no one at NWTS took any action to verify any information provided in the Notice of Default or
20
referenced in the declarations. *Id.*
21
          Believing the interest rate and monthly payments stated on the Notice to be inaccurate, Mr.
22
Meyer contacted the phone number for ACS but was unable to resolve his concerns. MD at p. 11.

ORDER REVERSING BANKRUPTCY COURT - 5

01  The Meyers accordingly hired attorney Richard Jones to represent them in July 2010 in their

02  mortgage-related dealings. *Id.* at pp. 11-12. On December 17, 2010, the Meyers, through Jones,

03  issued a Qualified Written Request ("QWR") under the Truth in Lending Act to ASC to determine

04  the holder and owner of the Note. DA at pp. 138-159. On January 12, 2011, ASC responded by

05  letter informing the Meyers that their loan was in a "pool" managed by U.S. Bank and provided a

06  contact address for U.S. Bank. MD at p. 12.

07         On August 13, 2010, NWTS executed a Notice of Trustee's sale, reciting a sale date of

08  November 19, 2010. DA at pp. 77-80. One day before the scheduled trustee's sale of their

09  residence, the Meyers filed a Chapter 13 bankruptcy plan through separate retained counsel, Larry

10  Feinstein. DA at pp. 81-126. On December 21, 2010, U.S. Bank, as trustee for GEL2, filed a proof

11  of claim listing the total amount due under the loan as $502,190.76, with delinquent monthly

12  payments from February 1, 2009 to November 1, 2010 and other costs totaling $86,020.02. *Id.* at

13  pp. 127-28. The Meyers' first proposed a Chapter 13 plan that provided only for payments of

14  $2,000 a month on their mortgage, which U.S. Bank opposed.

15         The dispute was resolved by the Meyers agreeing to give up their residential property in

16  satisfaction of their debt. On June 1, 2011, the Meyers stipulated that U.S. Bank could have relief

17  from the automatic stay, and the Meyers amended their plan to remove the U.S. Bank loan. *Id.* at

18  pp. 129-36. On August 19, 2011, Judge Overstreet confirmed a plan without the subject mortgage.

19  *Id.* at p. 137. On June 29, 2011, NWTS restarted the foreclosure process with issuance of an

20  Amended Notice of Trustee's Sale, reciting a sale date of August 12, 2011. MD at p. 13. The

21  Meyers subsequently sought mediation under the Foreclosure Fairness Act, RCW 61.24.163, and

22

ORDER REVERSING BANKRUPTCY COURT - 6

01 participated in three mediation sessions that included a Wells Fargo representative. DA at pp. 163,

02 223-24.

**PROCEDURAL BACKGROUND**

04     The Meyers commenced this adversary proceeding on July 23, 2012, seeking a temporary

05 restraining order enjoining the scheduled foreclosure sale. The bankruptcy court entered the TRO

06 on August 2, 2012. BR at Dkt. # 16. Upon non-opposition by Defendants U.S. Bank and ASC, the

07 court entered a preliminary injunction on August 20, 2012, requiring the Meyers to continue

08 making monthly payments of $3,616.03 into the court registry. *Id.* at Dkt. # 20. Upon the Meyers'

09 failure to respond to discovery requests and to make the requirement payments, the bankruptcy

10 court subsequently dissolved the injunction, dismissed all claims against U.S. Bank, Wells Fargo,

11 and MERS as a discovery sanction, and ordered that the trustee's sale could be reset. *Id.* at Dkt. ##

12 90, 91. Although the residence had not been sold when the case proceeded to bench trial against

13 NWTS, the Meyers decided to move into a rental house in July 2013. MD at p. 15. Mr. Meyers

14 testified that this decision was motivated by the stress of impending foreclosure.

15     On October 8, 2013, the case proceeded to bench trial against NWTS on claims for

16 violation of the Washington Deed of Trust Act, RCW 61.24 *et seq.* ("DTA"), the Washington

17 Consumer Protection Act, RCW 19.86 *et seq.* ("CPA"), and the Fair Debt Collection Practices Act,

18 15 U.S.C. § 1692 ("FDCPA"). On February 18, 2014, Judge Overstreet issued a memorandum

19 decision, finding in favor of Plaintiffs on their DTA and CPA claims but denying them relief under

20 the FDCPA. The Court therein awarded damages to the Meyers of $48,504, comprising actual

21 damages of $23,504, plus CPA treble damages of $25,000. *See* MD. Actual damages included

22 Jones's fees related to filing the QWR, Feinstein's fees related to filing the Chapter 13 bankruptcy,

01  monthly rent from July 2013 through trial, as well as security and pet deposit for the Meyers' rental

02  home, moving expenses, and lost wages attributable to the Meyers' attendance at mediations and

03  hearings. On March 26, 2015, the court also awarded the Meyers attorney's fees of $30,324 and

04  costs of $294.40, pursuant to RCW 19.86. BR, Dkt. # 169.

05      The bankruptcy court issued its final order and judgment on April 8, 2014. The instant

06  appeal by NWTS followed, with the briefing schedule renoted on several occasions at the request

07  of the parties and permission granted to UTA to participate in the appeal as amicus curiae.

08                          **STANDARD OF REVIEW**

09      The district court, acting in its appellate capacity, reviews the bankruptcy court's legal

10  conclusion *de novo* and its factual determinations for clear error. *In re Olshan*, 356 P.3d 1078,

11  1083 (9th Cir. 2004). Mixed questions of law and fact are reviewed *de novo*. *Banks v. Gills*

12  *Distributions Centers, Inc.*, 263 F.3d 862, 867 (9th Cir. 2001).

13                              **ANALYSIS**

14  **A.  Judicial Estoppel**

15      Although Judge Overstreet did not address the application of judicial estoppel in her

16  memorandum decision, NWTS urges the Court to find that the Meyers are judicially estopped

17  from asserting their claims against NWTS because they failed to list these claims as assets in their

18  bankruptcy schedule. The Meyers contend that judicial estoppel should not apply because: 1) the

19  argument was not raised or considered at trial, 2) their claims against NWTS were not known or

20  cognizable in July 2010 when they filed for Chapter 13 relief, and 3) NWTS concealed actions that

21  now give rise to the Meyers' claims.

22      "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage

ORDER REVERSING BANKRUPTCY COURT - 8

by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Under both federal and Washington law, three factors inform the court's decision whether to apply the doctrine to a particular case. First, a party's later position must be "clearly inconsistent" with its earlier position. Second, the party must have succeeded in persuading a court to accept its earlier position, such that judicial acceptance of a later inconsistent position would suggest that either the first or second court was being misled. And third, the party seeking to assert a later inconsistent position must derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.*; *Arkison v. Ethan Allen, Inc.*, 160 Wash.2d 5345, 538, 160 P.3d 13 (2007). Judicial estoppel applies to preclude a debtor from pursuing claims when he "has knowledge of enough facts to know that a potential cause of action exists during the pendency of [a] bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Hamilton*, 270 F.3d at 784.

As a threshold question, this Court must determine whether the judicial estoppel argument was properly before the bankruptcy court. In the Ninth Circuit, an appellate court may consider an issue, even if not ruled on by the bankruptcy court, so long as it was "raised sufficiently for the trial court to rule on it." *In re E.R. Fegert, Inc.*, 8887 F.2d 955, 957 (9th Cir. 1989). Thus, even where the bankruptcy court did not itself rule on it, "intermediate appellate courts may consider any issue supported by the record." *Id.* Here, the trial transcript shows that judicial estoppel was argued to the bankruptcy court. *See* Dkt. # 12-5, p. 37 (arguing that the Meyers "should be estopped, under case law from the Ninth Circuit" because they knew of the allegedly misleading information prior to filing for bankruptcy); Dkt. # 27, p. 49 (response by Mr. Meyers to question by NWTS counsel,

01  admitting that he did not inclue his claims against NWTS in the bankruptcy schedule); *Id.* at pp.

02  45-46 (response by Meyers admitting that his "confusion began" upon receiving notice of default

03  in July 9, 2010, prior to filing bankruptcy). The Court consequently finds that the record is

04  sufficiently developed to allow it to reach the merits of the judicial estoppel issue.

05      Nonetheless, the Court agrees with the Meyers that application of judicial estoppel would

06  be inequitable, where the case law underlying their claims against NWTS, and on which Judge

07  Overstreet relied, only arose from 2012 – two years after the Meyers filed for bankruptcy.

08  Specifically, Judge Overstreet recognized that the Washington Supreme Court's decision in *Bain*

09  *v. Metropolitan Mortgage Group, Inc.*, 175 Wash.2d 83, 10, 285 P.3d 34 (2012), and its progeny

10  had changed the legal landscape of the Washington Deed of Trust Act. *See* MD at pp. 16-18.

11  Whereas pre-*Bain* decisions had generally not recognized a pre-foreclosure cause of action under

12  the DTA, Judge Overstreet followed the 2013 appellate decisions in *Walker v. Quality Loan*

13  *Service Corp.*, 176 Wash.App. 294, 308 P.3d 716 (Wash.Ct.App. 2013) and *Bavand v. OneWest*

14  *Bank, F.S.B.,* 176 Wash.App. 574, 309 P.3d 636 (Wash.Ct.App. 2013) in finding that the Meyers

15  may pursue a pre-foreclosure cause of action under the DTA. Similarly, Judge Overstreet based

16  her CPA analysis on the Washington Supreme Court's recent clarification in *Klem v. Washington*

17  *Mutual*, 176 Wn.2d 771, 790, 295 P.3d 1179 (2013) that a trustee's failure to exercise independent

18  discretion as an impartial third party may be actionable as an unfair and deceptive practice under

19  the CPA.

20      Accordingly, the Meyers assertion of claims against NWTS in the adversary proceeding is

21  not "clearly inconsistent" with their failure to list claims against NWTS on their bankruptcy

22  schedule, as they only became cognizable several years after their bankruptcy filing. Further, the

ORDER REVERSING BANKRUPTCY COURT - 10

01    change in intervening law undercuts the assertion that the bankruptcy court was misled by the

02    failure to list these claims, since the claims arguably could not have been considered assets at the

03    time the bankruptcy was filed. Given the unsettled and shifting state of DTA law in Washington,

04    the Court declines to find the Meyers judicially estopped from pursuing their claims against

05    NWTS.

06    **B. Violation of Deed of Trust Act**

07           While, as Judge Overstreet recognized, the legal landscape of the DTA had changed

08    considerably since *Bain*, it has changed once again since Judge Overstreet issued her

09    memorandum decision. Judge Overstreet reasonably relied on the Washington appellate court

10    decisions in *Walker* and *Bavand* to conclude that the "Washington courts have spoken" in rejecting

11    the earlier holding in *Vawter v. Quality Loan Service Cop.*, 707 F.Supp.2d 1115, 1123 (W.D.

12    Wash. 2010) that there is no cause of action for violation of the DTA where no trustee's sale has

13    occurred. However, since the parties filed their opening briefs in this appeal, the Washington

14    Supreme Court released its decision in *Frias*, in which it held that "there is no actionable,

15    independent cause of action for monetary damages under the DTA based on DTA violations

16    absent a completed foreclosure sale." *Frias v. Asset Foreclosure Services, Inc.*, 181 Wash.2d 412,

17    429, 334 P.3d 529 (2014). *Frias* thereby overruled the conflicting holdings of *Walker* and *Bavand*

18    and now clearly bars the Meyers' DTA claim, which they admit is for "pre-sale [] compliance with

19    the DTA." *See* Appellee's Opening Brief, Dkt. # 23, p. 20 (asserting that "this case involves a

20    <u>pre-sale</u> challenge to the foreclosure sale in which Mr. and Mrs. Meyer brought suit against the

21    purported lenders, servicers, and trustee under RCW 61.24.130. No sale has occurred.") (emphasis

22    in original). Accordingly, this Court's *de novo* review of current law requires it to reverse Judge

01   Overstreet's determination as to the Meyers' DTA claim.

02   **C. Violation of Consumer Protection Act**

03          At the same time that *Frias* abrogated the pre-sale DTA cause of action, it confirmed that

04   violations of the DTA may nonetheless be actionable under the CPA even in the absence of a

05   completed foreclosure sale. *Frias*, 181 Wash.2d at 430. The Court also determined that such

06   claims are governed by ordinary principles applicable to all CPA claims developed under this

07   independent statutory cause of action and its corresponding body of case law. *Id.* at 432; *see also*

08   *Lyons v. U.S. Bank Nat. Ass'n*, 181 Wash.2d 775, 784, 336 P.3d 1142 (2014) ("*Frias* clearly

09   resolves the first issue in this case. Lyons cannot bring a claim for damages under the DTA in the

10   absence of a sale, but she may bring a claim for similar actions under the CPA."). Thus Judge

11   Overstreet did not err in determining that the Meyers could maintain a cause of action under the

12   CPA based on the alleged failure of NWTS to comply with the DTA. *See* MD at p. 23. The

13   question for this Court thus becomes whether the Meyers have established all of the elements of

14   their CPA claim.

15          The elements of a CPA claim are well-established and not in dispute. To prevail on her

16   CPA claim, a plaintiff must prove the following elements: (1) an unfair or deceptive act or

17   practice; (2) the act or practice occurred in trade or commerce; (3) the act or practice impacts the

18   public interest; (4) the act or practice caused injury to the plaintiff in his business or property; and

19   (5) the injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables,*

20   *Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780, 719 P.2d 531 (1986). Whether a particular act

21   or practice is "unfair or deceptive" is a question of law that this Court reviews *de novo*. *See Lyons*,

22   181 Wash.2d at 786. As a general matter, the CPA is to be "liberally construed that its beneficial

ORDER REVERSING BANKRUPTCY COURT - 12

01  purposes may be served." RCW 19.86.920. On appeal, NWTS disputes Judge Overstreet's

02  findings with respect to each prong of the CPA except the second, occurring in trade or commerce,

03  prong.

04  **1.  Unfair or Deceptive Act or Practice**

05          Judge Overstreet identified four separate acts or practices by NWTS that violated the DTA

06  and also met the first prong of the CPA. These were: (1) NWTS failed to verify whether the

07  servicer, ACS/Wells Fargo, had the requisite authority to issue the Beneficiary Declaration in

08  accordance with RCW 61.24.030(7); (2) NWTS accepted the Loss Mitigation Form from ASC

09  without evidence that ASC was the authorized agent of U.S. Bank for the purpose of executing this

10  document; (3) NWTS referred to itself in the Notice of Default as the authorized agent for the

11  beneficiary when it was already the successor trustee; and (4) NWTS included the same address

12  for the beneficiary and service in the Notice of Default, rather than including a separate address

13  and phone number for either U.S. Bank (the Note holder) or GEL2 (the Note owner).

14      **a)  <u>Reliance on Beneficiary Declaration and Loss Mitigation Form</u>**

15          The Deed of Trust Act, RCW 61.24.030, lays out requisites for a trustee's sale in a

16  nonjudicial foreclosure on a deed of trust. Among these requirements, subsection (7) provides:

17      (a) That for residential property, before the notice of a trustee's sale is recorded,
            transmitted, or served, the trustee shall have proof that the beneficiary is the
18          owner of any promissory note or other obligation secured by the deed of trust. A
            declaration by the beneficiary made under the penalty of perjury stating that the
19          beneficiary is the actual holder of the promissory note or other obligations
            secured by the deed of trust shall be sufficient proof as required under this
20          subsection.
        (b) Unless that trustee has violated his or her duty under RCW 61.24.010(4), the
21          trustee is entitled to rely on the beneficiary's declaration as evidence of proof
            required under this subsection.
22

01  RCW 61.24.030(7). RCW 61.24.010(4) in turn provides that the "trustee or successor

02  trustee has a duty of good faith to the borrower, beneficiary, and grantor."

03        The Act further requires that a Notice of Default include a declaration from the beneficiary

04  or authorized agent, referred to as a "Loss Mitigation Form," certifying that it has contacted or

05  tried to contact the borrower. RCW 61.24.031(2); *see also* RCW 61.24.031(9) (specifying the

06  required contents of the Foreclosure Loss Mitigation Form). As with the Beneficiary Declaration,

07  the Act provides trustees a safe harbor to rely on this declaration, absent a violation of the trustee's

08  duty of good faith to the borrower, beneficiary, or grantor. *See* RCW 61.24.031(2) ("Unless the

09  trustee has violated his or her duty under RCW 61.24.010(4), the trustee is entitled to rely on the

10  declaration as evidence that the requirements of this section have been satisfied, and the trustee is

11  not liable for the beneficiary's or its authorized agent's failure to comply with the requirements of

12  this section.").

13        Here, it is undisputed that NWTS accepted and relied on both a Beneficiary Declaration

14  and Loss Mitigation Form. Nonetheless, Judge Overstreet determined that this reliance was

15  improper. As to the former, Judge Overstreet recognized that NWTS "had a declaration from

16  Wells Fargo, the purported attorney-in-fact for U.S. Bank." MD at p. 21. While noting the

17  existence of three powers of attorney issued by U.S. Bank to Wells Fargo in 2007 which "would

18  have given Wells Fargo broad powers to sign documents related to foreclosures on behalf of U.S.

19  Bank," Judge Overstreet found that "NWTS had no notice or knowledge of any of these powers of

20  attorney or any other agreement substantiating the authority of Wells Fargo to act on behalf of U.S.

21  Bank." *Id.* Judge Overstreet found that NWTS was not entitled to rely on a Beneficiary Declaration

22  where it lacked such proof. She similarly found that NWTS could not rely on the Loss Mitigation

ORDER REVERSING BANKRUPTCY COURT - 14

01  Form, signed by John Kennerty on behalf of ASC, because it lacked evidence that ASC was the

02  authorized agent of U.S. Bank for the purpose of executing the document. MD at p. 23. In essence,

03  as amici point out, Judge Overstreet held NWTS to an affirmative duty to investigate the veracity

04  of the representations contained in the declarations on which it relied.[1]

05          Once again, case law developed since Judge Overstreet issued her decision has

06  circumscribed the situations in which such an affirmative duty would maintain. First, courts have

07  clarified that, in accordance with the plain language of the statute, the trustee is entitled to treat the

08  representations in a beneficiary declaration as true and rely on the declaration in initiating

09  nonjudicial foreclosure proceedings, absent evidence conflicting with the declaration's

10  representations or a separate violation of the trustee's duty of good faith. *See, e.g. Trujillo v.*

11  *Northwest Service, Inc.*, 181 Wash.App. 484, 326, P.3d. 768 (Wash.Ct.App. 2014) ("Absent

12  conflicting evidence, the declaration should be taken as true.")2; *Pelzel v. Nationstar Mortg., LLC*,

13  2015 WL 1331666, *6 (Wash.Ct.App. 2015). The Meyers cite to no authority suggesting that a

14  different standard should pertain with respect to reliance on the Loss Mitigation Form, and the

15  Court can identify none.

16          The fact that Wells Fargo signed the Beneficiary Declaration as attorney-in-fact fact for

17  U.S. Bank, where specifically authorized to do so by power of attorney agreements, does not

18  change this result. *See, e.g. id.* ("[W]e hold that under RCW § 61.24.030(7)(b), the declaration of a

19  1 NWTS asks the Court to find admission of John Kennerty's *Geline* testimony improper under Federal Rule of
20  Evidence 804. The Court declines to do so, as it is unable to find that Judge Overstreet clearly erred in determining that
    Kennerty was unavailable as a witness and that his testimony fell under the former testimony exception to the rule
    against hearsay, FRE 804(b)(1), or that the admission, if in error, affected the bankruptcy court's disposition. Further,
21  it appears that NWTS failed to lodge objections to any specific portions of the testimony upon Judge Overstreet's
    invitation. *See* DA at p. 204.

    2  The Washington Supreme Court's recent acceptance of a petition to review *Trujillo* does not affect this Court's
22  decision. The central holding of *Trujillo*, that RCW 61.24.030(7) is satisfied by proof that the beneficiary is either the
    owner or holder of the promissory note, is not implicated in this case, where the Beneficiary Declaration identified
    U.S. Bank as both the Note's holder and trustee for its owner, GEL2.

01  beneficiary's agent stating the beneficiary is the note's holder is sufficient proof that the

02  beneficiary is the note's holder, unless the trustee has violated its duty of good faith in some other

03  way."); *U.S. Bank Nat. Ass'n v. Woods*, 2012 WL 2031122 (W.D. Wash. 2012) (rejecting

04  borrowers' claims under the DTA where lenders submitted evidence showing that NWTS was in

05  possession of a declaration signed by Wells Fargo as attorney-in-fact for U.S. Bank"); *see also*

06  *Knecht v. Fid. Nat. Title Ins. Co.*, 2013 WL 7326111 (W.D. Wash. 2013) ("Mr. Knecht complains

07  that there is no recorded power-of-attorney document establishing AHMSI's right to act on DB's

08  behalf, but he points to no authority requiring AHMSI to record such a document. He also fails to

09  establish his own standing to object to AHMSI's acting on DB's behalf."). This result is so because

10  an authorized agent is empowered to make binding declarations within the scope of its agency on

11  its principal's behalf such that the declarations of the agent are deemed to be those of the principal

12  itself. *Ennis v. Smith*, 171 Wash. 126, 130, 18 P.2d 1 (1993).

13          Further, courts have since uniformly rejected the invitation to import a duty to verify the

14  information contained in the beneficiary declaration into the trustee's duty of good faith. In *Pelzel*,

15  for instance, the Washington Court of Appeals declined to find a DTA violation where the only

16  violation of the trustee's duty of good faith alleged was in its reliance on the beneficiary

17  declaration as proof that the beneficiary was the note's holder. *See Pelzel*, 2015 WL 1331666 at *6.

18  In an unpublished decision, the Ninth Circuit also recently rejected a borrower's argument that

19  NWTS violated its duty of good faith by failing to obtain proof that OneWest was the promissory

20  note's owner, where OneWest had declared itself to be the note's holder on the beneficiary

21  declaration. The Ninth Circuit found that "NWTS complied with its obligation under the statute

22  when it relied on OneWest's declaration under penalty of perjury," thereby refusing to hold NWTS

Case 2:14-cv-00297-RSM   Document 35   Filed 04/10/15   Page 17 of 24

01 to an affirmative duty to investigate. *Bavand v. OneWest Bank FSB*, 587 Fed.Appx. 392, 394 (9th

02 Cir. 2014). Courts in this district have also been uniform in declining to import an affirmative duty

03 to verify into the trustee's duty of good faith. *See, e.g. Mickelson v. Chase Home Fin.* LLC, 2012

04 WL 6012791 (W.D. Wash. 2012), *aff'd* , 2014 WL 2750133 (9th Cir. 2014) ("The duty of good

05 faith does not create a duty to conduct an independent verification of sworn affidavits….NWTS

06 relied, as they are specifically permitted to do, on a declaration made under penalty of perjury.

07 They did not breach their duty of good faith in doing so."); *In re Butler*, 512 B.R. 643, 657 (Bankr.

08 W.D. Wash. 2014) (finding that NWTS was "entitled to rely on the Beneficiary Declaration, and

09 had no duty to undertake an independent investigation").

10       Here, as in *Pelzel*, Plaintiffs have failed to show that NWTS breached its duty of good faith

11 independent of its allegedly improper reliance on the Beneficiary Declaration and Loss Mitigation

12 Form without investigating their veracity. Further, NWTS could not have been alerted to any

13 errors in the information attested to on these documents, as it is undisputed that the information

14 they contained was in fact true. Absent a showing that NWTS violated its duty of good faith

15 *independent* of its reliance on the declarations, the vast weight of case law now deems NWTS's

16 reliance without further inquiry to be proper.

17       Plaintiffs' citations to the recent Washington Supreme Court decisions *Lyons* and *Klem*

18 only lend further support to this conclusion. The Court in *Klem*, a decision heavily relied on by

19 Judge Overstreet, opined that a trustee owes a duty to act impartially toward both parties to a

20 foreclosure proceeding. *Klem*, 176 Wash.2d at 790. The Court found that a trustee violated this

21 duty, and could be liable under the CPA for doing so, where it deferred to a lender on whether to

22 postpone a foreclosure sale and ignored entirely the dozens of requests by the guardian for the

ORDER REVERSING BANKRUPTCY COURT - 17

01    borrower to postpone the sale. *Id.* at 791. While Judge Overstreet reasonably read *Klem*'s

02    pronouncements on the duty of impartiality to be implicated in this case, the Washington Supreme

03    Court subsequently made clear that this duty is not so capacious. In *Lyons,* the Supreme Court

04    found that a trustee had violated its duty of good faith by summarily deferring to Wells Fargo's

05    preferred course of action and ignoring the borrower's vociferous protests that the situation

06    between the parties had changed subsequent to which NWTS lacked the authority to foreclose.

07    *Lyons*, 181 Wash.2d at 788. In both these cases, the Court faulted the trustee for failing to

08    investigate only when confronted with a host of information about irregularities in the foreclosure

09    process. By contrast, no such irregularities exist in this case, NWTS had no notice of errors in the

10    declarations or problems in the foreclosure proceeding, and all parties recognized that NWTS

11    possessed authority to foreclose.

12            While the Court agrees with both Judge Overstreet and the Meyers that there may be good

13    reason to require trustees to take some action or institute some process to ensure that the

14    information on which they rely is correct, the Washington legislature has evidently chosen not to

15    follow such a course. The Court finds that a proper reading of *Lyons* is that a trustee has a duty to

16    investigate only when it "knew about [] conflicting information regarding [its] right to initiate

17    foreclosure" or when the beneficiary declaration contained an inherent ambiguity. *See Lyons*, 181

18    Wash.2d at 788, 791 (holding that NWTS may not "just rely on [an] ambiguous declaration"). No

19    such duty would be triggered in this case.

20            Finally, a technical violation of the DTA is not in itself sufficient to constitute an unfair or

21    deceptive practice. As the Ninth Circuit noted, "Washington state courts have required the

22    borrower to show prejudice before they will set aside a trustee's foreclosure sale in the face of

ORDER REVERSING BANKRUPTCY COURT - 18

01 allegations of technical errors." *See Bavand*, 587 Fed.Appx. at 394-95 (citing *Amresco*

02 *Independence Funding, Inc. v. SPS Properties, LLC*, 199 P.3d 884, 886-87 (Wash.Ct. App. 2005));

03 *see also Steward v. Good*, 51 Wn.App. 509, 754 P.2d 150 (1998) (locating a "requirement that

04 prejudice be established" where a "technical violation" of the DTA occurs and there was "no

05 showing of harm to the debtor"). Even if NWTS had a duty to investigate the veracity of the

06 declarations, its investigations would have only revealed that the information contained in them

07 was correct. Accordingly, the Meyers cannot show that they were prejudiced or deceived, even if

08 NWTS did not strictly comply with the DTA. For all these reasons, the Court declines to find that

09 NWTS's reliance on the Beneficiary Declaration and Loss Mitigation Form without independent

10 verification constituted an unfair or deceptive practice in violation of the CPA.

11       **b) Issuance of Notice of Default as an Authorized Agent**

12       Judge Overstreet also located a deceptive practice in NWTS's reference to itself as

13 authorized agent for the beneficiary in the Notice of Default when the evidence established that

14 NWTS was already the successor trustee as the time it issued the Notice. The Court finds that

15 Judge Overstreet's conclusion to this effect is not supported by the statutory language.

16       Under the DTA, a notice of default may be issued by the "beneficiary or trustee." RCW

17 61.24.030(8); *see also* RCW 61.24.031(1)(a) ("A trustee, beneficiary, or authorized agent" may

18 issue a notice of default). Because NWTS had already been appointed successor trustee at the time

19 that it issued the notice, the statute provided it authority to do so, regardless of whether it was

20 actually an authorized agent for the beneficiary as well.

21       Further, if improper, the Meyers have made no showing that they were prejudiced by

22 NWTS's reference to itself as an agent rather than trustee, where NWTS indisputably had

01 authority either way to issue the Notice. *See In re Butler*, 512 B.R. at 657 (rejecting identical

02 argument on the grounds that even if NWTS was not the beneficiary's authorized agent, "Plaintiff

03 did not address why a reference to [NWTS] being One West's 'duly authorized agent' would be a

04 *material* violation of the Deed of Trust Act. It is unclear what alleged harm stemmed from that

05 particular inaccuracy.") (emphasis in original). While *Bain* recognized that a CPA violation may

06 lie where a trustee closes without authority, the Meyers here have not made a showing that NWTS

07 lacked the authority to foreclose or issued the Notice without authority to do so. The Court

08 consequently concludes that this alleged inaccuracy did not constitute an actionable unfair or

09 deceptive act.

10 **c) Inclusion of Same Address for Owner and Servicer in Notice of Default**

11 Finally, there does not appear to be any support for Judge Overstreet's conclusion that

12 NWTS violated the CPA by only providing an address and phone number for ACS on the Notice

13 of Default. RCW 61.24.030(8)(l) provides that the notice of default shall contain the following

14 information:

15 In the event the property secured by the deed of trust is residential real property, the
   name and address of the owner of any promissory notes or other obligations
16 secured by the deed of trust and the name, address, and telephone number of a party
   acting as a servicer of the obligations secured by the deed of trust.

17

18 Here, NWTS provided the same address and phone number for both the Note holder/beneficiary,

19 U.S. Bank, and its servicer, ACS. NWTS argues that it was proper for it to provide U.S. Bank's

20 phone number "care of" ACS because U.S. Bank was merely the legal title holder for the Note's

21 owner, GEL2, which lacked a physical address and phone number, and because ACS was the

22 relevant entity to address the Meyers' queries.

Regardless of whether NWTS strictly complied with the language of this statutory

provision, the Meyers were unable to point to any way in which they were deceived or otherwise prejudiced by only receiving a phone number for ACS, either at trial or when specifically prompted by this Court upon oral argument. Mr. Meyer was able to immediately reach a Wells Fargo employee through the ACS phone number, where Wells Fargo was acting as attorney-in-fact for U.S. Bank. While the Meyers claim that they would not have had to hire attorney Jones to issue a Qualified Written Request had they known of their lender's true identity, the QWR itself makes no mention of the notice of default and instead complains of inaccuracies in accounting of the loan, robo-signing, and predatory lending practices. *See* DA at pp. 138-159. The Meyers were also able to engage in three, albeit apparently unsuccessful, mediation sessions after contacting ACS. Even if NWTS did not strictly comply with this statutory provision, its deviation was only a technical one, and liability cannot lie where the Meyers could not show at trial that the practice was likely to deceive. *See Panag v. Farmers Ins. Co. of WA*, 166 Wash.2d 27, 50, 204 P.3d 885 (2009) ("Deception exists if there is a representation, omission or practice that is likely to mislead a reasonable customer.").

## 2. Injury and Damages

Before a violation of the CPA may be found, an injury to the claimant's business or property must be established. *Hangman*, 105 Wash.2d at 792. Plaintiffs may only recover for injuries that they demonstrate were proximately caused by a defendant's unfair or deceptive practices. *See Bhatti v. Gild Mfg. Co.*, 2013 WL 6773673, *3 (9th Cir. 2013) (rejecting CPA claim premised on DTA violation because the "cause prong" was not satisfied). The injury "need not be great" and no monetary damages need be proven. *Mason v. Mortgage America, Inc.*, 114 Wash.2d 842, 854, 792 P.2d 142 (1990). Nonquantifiable injuries suffice, although mental distress alone

01 does not establish injury. *Stephens v. Omni Ins. Co.*, 138 Wash.App. 151, 180, 159 P.3d 10

02 (Wash.Ct. App. 2007). Incurring time and money to prosecute a CPA claim also does not suffice,

03 *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wash.App. 553, 564, 825 P.2d 714 (1992),

04 although "consulting an attorney to dispel uncertainty regarding the nature of an alleged debt"

05 may. *Panag*, 166 Wash.2d at 62. Because damages are strictly limited to those in "business or

06 property," lost wages are not compensable under the CPA. *Ambach v. French*, 167 Wn.2d 167, 216

07 P.3d 405 (2009).

08      Here, the record does not support Judge Overstreet's finding that the damages awarded

09 were proximately caused by the alleged unfair or deceptive acts. As stated above, the QWR was

10 addressed to the loan's servicers and raised no concerns about identification of the Note owner.

11 The Court is also unable to discern how the Meyers' bankruptcy filing could have been

12 proximately caused by any of the alleged deceptive acts, particularly given that the bankruptcy

13 plan was confirmed even after the subject loan was removed from it. The Meyers' bankruptcy

14 filing lists two automobile loans and a cumulative unsecured debt of $105,681.42 in addition to the

15 home mortgage loan. *See* DA at pp. 94-110 (bankruptcy schedules). Although apparently

16 precipitated by pending foreclosure proceedings, the bankruptcy filing was plainly not dependent

17 on them, and in no event were NWTS's alleged DTA violations the but-for cause of the Meyers'

18 Chapter 13 filing.

19      Similarly, the record does not support the finding that the Meyers' rent, deposits, and

20 moving expenses were proximately cause by any of the allegedly deceptive acts by NWTS in

21 initiating the foreclosure proceedings. Mr. Meyers testified that the family moved out before their

22 house was foreclosed on after four years without making any mortgage payments. DA at pp. 231,

01   233. The Meyers' decision to move out was precipitated by their default, not be any of the asserted

02   technical violations of the DTA by NWTS. Finally, the lost wages that Judge Overstreet awarded

03   are not compensable under the CPA as a matter of law. *See Ambach*, 167 Wn.2d at 409 (lost wages

04   are compensable in personal injury, not CPA, actions).

05         Plaintiffs have undeniably suffered a great loss, and like many former homeowners, were

06   the victim of an economic downturn and the cumulative decisions of the many exploitative actors

07   that precipitated it. While the Court does not deny that the Meyers are victims, it simply cannot

08   find that they were victimized by NWTS in a way that can be traced to the losses they have

09   endured. Similarly, the Court in no way endorses the decision by NWTS to fulfill only the bare

10   minimum of its duty of good faith to borrowers. A greater fiduciary standard may well be called

11   for in light of the evident power differentials and access to information extent between lenders and

12   borrowers; indeed, the nature of a trustee relationship seems to require more than what the Meyers

13   were given in this case. Although a legislative fix may well be called for, this Court can do little

14   more than chastise NWTS for not behaving with greater affirmative care toward vulnerable

15   borrowers relying on them to act fairly and diligently. As Judge Jones recently remarked in a

16   similar situation, "[t]he court can chide Defendants for abysmal customer service in a business tied

17   intimately to its customers' financial and emotional well-being. The court cannot, however,

18   change the basic truth that if a homeowner cannot pay her mortgage, she will ultimately lose her

19   home." *Singh v. Federal Nat. Mortg. Ass'n*, 2014 WL 504820, *7 (W.D. Wash. 2014).

20         As current case law and the facts in the record do not support either the existence of

21   actionably unfair or deceptive acts by NWTS or of a causal nexus between NWTS's acts and the

22   Meyers' injuries, the Court concludes that the bankruptcy court erred in finding for the Meyers on

ORDER REVERSING BANKRUPTCY COURT - 23

01   their CPA claim and in granting damages.[3] *See Singh*, 2014 WL 504820 at *6 (dismissing CPA

02   claim where plaintiff borrowers failed to show causation despite finding that borrowers pled

03   sufficient fact to establish that defendant trustee violated its duty of good faith).

04   **CONCLUSION**

05        For the reasons stated herein, the Court concludes that the Meyers failed to meet their

06   burden of proof under Washington's Deed of Trust Act and Consumer Protection Act. The Court

07   REVERSES the decision of the bankruptcy court and grants judgment in favor of

08   Defendant-Appellant Northwest Trustee Service, Inc. on all claims.

09

10        Dated this 9th day of April 2015.

11

12

13                     RICARDO S. MARTINEZ
                          UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

---

3 As the Court determines that the Meyers have not made a sufficient showing under multiple prongs of the CPA, it does not reach NWTS's argument that Judge Overstreet erred in finding the public interest prong to be satisfied.

ORDER REVERSING BANKRUPTCY COURT - 24